```
 1                UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF FLORIDA
 2
                   18-20613-CR-MARTINEZ/OTAZO-REYES
 3

 4
      UNITED STATES OF AMERICA,      )
 5                                   )
                     PLAINTIFF,      )
 6                                   )
              VS.                    )
 7                                   )
      SAMUEL BAPTISTE,               )
 8                                   )
                     DEFENDANT.      )
 9    _____  )

10                 (TRANSCRIPT BY DIGITAL RECORDING)

11

12            TRANSCRIPT OF FARETTA/PRO SE STATUS HEARING HAD

13    BEFORE THE HONORABLE ALICIA M. OTAZO-REYES, IN MIAMI,

14    MIAMI-DADE COUNTY, FLORIDA, ON FEBRUARY 6, 2019, IN THE

15    ABOVE-STYLED MATTER.

16

17
      APPEARANCES:
18
      FOR THE GOVERNMENT:  MARC S. ANTON, A.U.S.A.
19                         500 EAST BROWARD BOULEVARD, SUITE 700
                           FORT LAUDERDALE, FL 33394, 954 660-5096
20
      FOR THE DEFENDANT:   ABIGAIL E. BECKER, A.F.P.D.
21                         KATHLEEN E. MOLLISON, A.F.P.D.
                           150 WEST FLAGLER STREET, SUITE 1700
22                         MIAMI, FL 33130 - 305 533-7000

23              CARL SCHANZLEH, RPR - CM
                CERTIFIED COURT REPORTER
24                 9960 SW 4TH STREET
                PLANTATION, FLORIDA 33324
25                  954 424-6723
```

```
 1  (MIAMI, MIAMI-DADE COUNTY, FLORIDA;  FEBRUARY 6, 2019, IN OPEN
 2  COURT.)
 3           THE COURT:  GOOD AFTERNOON, EVERYONE.
 4           THE CLERK:  THE UNITED STATES OF AMERICA VERSUS SAMUEL
 5  BAPTISTE, CASE NUMBER 18-20613-CRIMINAL-MARTINEZ.
 6           COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE
 7  RECORDS.
 8           MR. ANTON:  GOOD AFTERNOON, YOUR HONOR.  MARK ANTON ON
 9  BEHALF OF THE UNITED STATES.
10           THE COURT:  MR. ANTON.
11           MS. BECKER:  GOOD AFTERNOON, YOUR HONOR.  ABIGAIL
12  BECKER AND KATE MOLLISON, ASSISTANT FEDERAL PUBLIC DEFENDERS ON
13  BEHALF OF MR. BAPTISTE WHO IS PRESENT.
14           THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.
15           YOU MAY BE SEATED.
16           WE'RE HERE ON DEFENDANT'S UNOPPOSED MOTION FOR A
17  FARETTA HEARING.  THIS MATTER WAS REFERRED TO ME BY JUDGE
18  MARTINEZ.
19           IT IS MY UNDERSTANDING THAT AT A CALENDAR CALL THERE
20  WAS SOME INQUIRY FROM JUDGE MARTINEZ REGARDING THE DEFENDANT
21  REPRESENTING HIMSELF AND AT THAT TIME JUDGE MARTINEZ INDICATED
22  THAT HE REQUIRED A WRITTEN MOTION AND THAT'S WHERE WE'RE AT
23  NOW.
24           MS. BECKER:  YES, YOUR HONOR.  THAT'S CORRECT.
25           THE COURT:  ALL RIGHT.
```

1          WAS THE CALENDAR CALL THE FIRST TIME THAT MR. BAPTISTE

2  EXPRESSED HIS DESIRE TO REPRESENT HIMSELF?

3          MS. BECKER:  THAT WAS THE FIRST TIME HE EXPRESSED THAT

4  DESIRE TO THE COURT, YOUR HONOR.

5          THE COURT:  ALL RIGHT.  BUT THERE HAD BEEN DISCUSSIONS

6  -- WITHOUT GOING INTO ANY ATTORNEY/CLIENT CONFIDENCES, WHERE

7  DISCUSSIONS OF THAT WITH YOU PRIOR TO THE CALENDAR CALL, AHEAD

8  OF THE CALENDAR CALL?

9          I'M TRYING TO GET A SENSE OF HOW LONG THIS DESIRE HAS

10  EXISTED.

11          MS. BECKER:  YES, YOUR HONOR.

12          I DON'T RECALL OFF THE TOP OF MY HEAD WHEN SUCH A

13  CONVERSATION WOULD HAVE TAKEN PLACE, BUT THERE WAS A

14  CONVERSATION BEFORE THAT STATUS CONFERENCE THAT WAS ON JANUARY

15  2ND.

16          THE COURT:  ALL RIGHT.

17          ALL RIGHT.  WELL, AS YOU KNOW THE TASK AT HAND IS TO

18  DETERMINE THE -- AND MAKE A RECORD OF THE HAZARDS AND

19  DISADVANTAGES OF SELF-REPRESENTATION.  THAT IS BASICALLY THE

20  ESSENCE OF A FARETTA HEARING.

21          AS WE ALL KNOW THE ACCUSED HAS A CONSTITUTIONAL RIGHT

22  TO SELF-REPRESENTATION, WAIVER OF COUNSEL.  HOWEVER, IT MUST BE

23  KNOWING AND VOLUNTARY.  THIS MEANS THAT THERE MUST BE A CLEAR

24  RECORD THAT THE DEFENDANT IS FULLY AWARE OF THE HAZARDS AND

25  DISADVANTAGES OF SELF-REPRESENTATION.

4

1           SO THAT IS THE PURPOSE OF THE HEARING.  I NEED TO MAKE

2    INQUIRY DIRECTLY FROM MR. BAPTISTE FOLLOWING BASICALLY THE

3    RECOMMENDED QUERY PROCESS BASED ON FARETTA AND SIMILAR CASES

4    THAT I AM USING AS A GUIDE, THE DISTRICT JUDGES BENCH BOOK.

5           SO I WILL REQUIRE THAT MR. BAPTISTE BE PLACE UNDER

6    OATH AT THIS TIME.

7           THE CLERK:  PLEASE STAND AND RAISE YOUR RIGHT HAND.

8           (DEFENDANT SWORN)

9           THE DEFENDANT:  I'LL TELL THE TRUTH.

10          THE COURT:  YOU MAY BE SEATED.

11          THE COURT:  ALL RIGHT.  LET'S MAKE SURE THAT HE CAN --

12   THAT THE MICROPHONE IS CLOSE TO HIM.  YOU CAN BRING IT DOWN.

13          BUT IF YOU PUT IT ON THE TABLE RATHER THAN -- AND NOW

14   ADJUST IT BECAUSE IT'S TOO LOW.  WE NEED TO MAKE SURE THAT IT

15   GETS RECORDED.

16          ALL RIGHT.  MR. BAPTISTE, AS I SAID YOU DO HAVE THE

17   CONSTITUTIONAL RIGHT TO SELF-REPRESENTATION BUT OUR TASK IS TO

18   ENSURE THAT YOUR DECISION TO WAIVE YOUR EQUAL RIGHT TO HAVE THE

19   ASSISTANCE OF COUNSEL AND THE REPRESENTATION OF COUNSEL THAT

20   YOU APPEAR TO BE WANTING TO WAIVE EVEN THOUGH YOU HAVE BEEN

21   APPOINTED TO BE REPRESENTED BY THE FEDERAL PUBLIC DEFENDER THAT

22   THAT DECISION TO WAIVE REPRESENTATION AND TO REPRESENT YOURSELF

23   IS KNOWING AND VOLUNTARY.

24          SO I WILL ASK YOU A SERIES OF QUESTIONS AND I WOULD

25   APPRECIATE YOUR CANDID ANSWERS TO THEM.

1           FIRST OF ALL, HAVE YOU EVER STUDIED LAW?

2           THE DEFENDANT:  NO.

3           THE COURT:  HAVE YOU EVER REPRESENTED YOURSELF IN A

4  CRIMINAL ACTION?

5           THE DEFENDANT:  NO.

6           THE COURT:  NOW, I WOULD LIKE TO GO OVER AT THIS TIME

7  WHAT THE CHARGES ARE AGAINST YOU.

8           THE INDICTMENT THAT WAS RETURNED ON JULY 19TH, 2018.

9  IN THAT INDICTMENT YOU'RE CHARGED IN FOUR SEPARATE COUNTS.  THE

10  DISTRIBUTING INFORMATION PERTAINING TO EXPLOSIVES, IN VIOLATION

11  OF TITLE 18, UNITED STATES CODE SECTION 842(P) AS IN PETER, (2)

12  CAPITAL (A).  ONE SUCH CHARGE INVOLVES A DOCUMENT ENTITLED,

13  INSTRUCTIONS HOW TO MAKE A HOMEMADE PIPE BOMB.  THE OTHER ONE

14  INVOLVES A DOCUMENT ENTITLED, PIPE BOMBS.

15           THE THIRD ONE INVOLVES A DOCUMENT ENTITLED, IMPROVISED

16  EXPLOSIVE DEVICES.

17           THE FOURTH ONE INVOLVES A DOCUMENT ENTITLED,

18  IMPROVISED EMISSIONS BLACK BOOK, VOLUME ONE.

19           THOSE ARE THOSE FOUR COUNTS.

20           COUNT 5 CHARGES YOU WITH ATTEMPTING TO PROVIDE

21  MATERIAL SUPPORT TO A FOREIGN TERRORIST ORGANIZATION, MAINLY

22  THE ISLAMIC STATE OF IRAQ AND AL-SHAM, IN VIOLATION OF TITLE

23  18, UNITED STATES CODE, 2339 CAPITAL (B), SMALL (A)(1).

24           AND THEN COUNT 6 CHARGES YOU WITH ATTEMPTING TO

25  PROVIDE MATERIALS SUPPORT TO TERRORISTS.  AGAIN THE SAME TYPE

1  OF CHARGE BUT THIS WAS UNDER 18, USC 2339 CAPITAL (A) SMALL

2  (A).

3        COUNT 5 SPECIFIES ISIS AS THE TERRORIST ORGANIZATION

4  INVOLVED.

5        COUNT 6 DOES NOT SPECIFY A PARTICULAR TERRORIST

6  ORGANIZATION.

7        HAVE YOU REVIEWED THIS INDICTMENT IN DETAIL AND DO YOU

8  UNDERSTAND THE CHARGES THAT HAVE BEEN BROUGHT AGAINST YOU?

9        THE DEFENDANT:  YES FOR THE MOST PART.

10        THE COURT:  SAY AGAIN?

11        THE DEFENDANT:  YES FOR THE MOST PART.

12        THE COURT:  OKAY.  ARE THERE ANY PARTS AS TO WHICH YOU

13  ARE UNCLEAR THAT YOU MIGHT NEED ASSISTANCE FROM YOUR CURRENT

14  COUNSEL TO EXPLAIN TO YOU BEFORE WE GO FORWARD?

15        THE DEFENDANT:  NO.

16        THE COURT:  ALL RIGHT.  SO YOU QUALIFY IT FOR THE MOST

17  PART.  WHAT IS IT THAT YOU DO NOT UNDERSTAND?

18        THE DEFENDANT:  IT WAS JUST A WAY OF ANSWERING, YES.

19        THE COURT:  SO YOU UNDERSTAND ALL SIX COUNTS?

20        THE DEFENDANT:  YES.

21        THE COURT:  FULLY AND COMPLETELY?

22        THE DEFENDANT:  YES.

23        THE COURT:  OKAY.  NOW, LET ME HEAR FROM THE

24  GOVERNMENT A PROFFER REGARDING THE PENALTIES ASSOCIATED WITH

25  THIS COUNTS SO I CAN INFORM MR. BAPTISTE OF THAT.

1          MR. ANTON:  YOUR HONOR, AS TO COUNTS 1 THROUGH 4, THE

2   DEFENDANT IS FACING A STATUTORY MAXIMUM TERM OF 20 YEARS

3   IMPRISONMENT ON THE DISTRIBUTING INFORMATION PERTAINING TO

4   EXPLOSIVE COUNTS.

5          AS TO COUNT 5 THE DEFENDANT IS ALSO FACING A STATUTORY

6   MAXIMUM TERM OF IMPRISONMENT OF 20 YEARS ON THE ATTEMPTING TO

7   PROVIDE MATERIAL SUPPORT TO A FOREIGN TERRORIST ORGANIZATION,

8   THAT BEING ISIS.

9          AND FINALLY AS TO COUNT 6 THE DEFENDANT IS FACING A

10  STATUTORY MAXIMUM TERM OF IMPRISONMENT OF 15 YEARS ON THE

11  ATTEMPTING TO PROVIDE MATERIAL SUPPORT TO TERRORIST CHARGES.

12          THE COURT:  TO TERRORIST ORGANIZATIONS YOU MEAN.

13          MR. ANTON:  YES.

14          THE COURT:  ALL RIGHT.  AND THEN WHAT KIND OF --

15          MR. ANTON:  HE'S FACING UP TO THREE YEARS OF

16  SUPERVISED RELEASE AS TO EACH COUNT AS WELL AS POTENTIALLY UP

17  TO A $250,000 FINE AND A $100 SPECIAL ASSESSMENT AS TO EACH

18  COUNT.

19          THE COURT:  ALL RIGHT.  SO WE'RE TALKING AS TO THESE

20  CHARGES, MR. BAPTISTE, SO THAT YOU UNDERSTAND YOUR EXPOSURE.

21  OKAY?

22          COUNTS 1 THROUGH 5, THE MAXIMUM SENTENCE IS 20 YEARS,

23  CORRECT?

24          MR. ANTON:  CORRECT, YOUR HONOR.

25          THE COURT:  COUNT 5 -- I MEAN -- THAT'S 1 THROUGH 5.

1          COUNT 6 THE MAXIMUM SENTENCE IS 15 YEARS.

2          IS THERE ANY COMBINATION, OR IS THERE STACKING, OR ARE

3   THEY CONCURRENT?

4          MR. ANTON:  WELL, JUDGE, THEY COULD BE -- THE DISTRICT

5   JUDGE, IT'S WITHIN HIS PURVIEW TO SENTENCE THE DEFENDANT

6   CONSECUTIVELY.  SO IN THEORY IN DEFENDANT COULD BE SENTENCED UP

7   TO 115 YEARS OF IMPRISONMENT.

8          I WILL FURTHER ADVISE THE COURT THAT IT IS POSSIBLE

9   THAT IF THE DEFENDANT IS FOUND GUILTY THAT HE'S FACING AN

10  ADVISORY GUIDELINE RANGE OF LIFE IMPRISONMENT.

11         THE COURT:  ALL RIGHT.  SO DEPENDING ON HOW THE JUDGE

12  ASSESSES THESE COUNTS HE MAY -- SHOULD YOU BE FOUND GUILTY OF

13  ALL OF THEM AT TRIAL, HE MAY REQUIRE THAT YOU SERVE THEM

14  CONCURRENTLY OR THAT YOU SERVE THEM CONSECUTIVELY.

15         THE JUDGE WOULD ALSO BE LOOKING AT WHAT ARE KNOWN AS

16  THE ADVISORY FEDERAL SENTENCING GUIDELINES.  AND WHEN THAT

17  CALCULATION IS MADE THERE IS A POSSIBILITY THAT YOU COULD BE

18  SENTENCED TO LIFE IN PRISON.  THAT IS THE IMPRISONMENT TERM.

19         IN ADDITION THERE IS A $250,000 FINE THAT GENERALLY

20  ACCOMPANIES THE SENTENCES.  THERE IS ALSO WHAT IS KNOWN AS

21  SUPERVISED RELEASE.

22         I DON'T KNOW IF YOU ARE FAMILIAR WITH THAT.  BUT AFTER

23  YOU COMPLETE YOUR SENTENCE THEN YOU ARE ON A TERM OF SUPERVISED

24  RELEASE WHERE YOU ARE SUPERVISED BY THE PROBATION OFFICE AND

25  THAT TERM WOULD BE ANYWHERE UP TO THREE YEARS, AM I CORRECT?

1            MR. ANTON:  YES, YOUR HONOR.

2            THE COURT:  UP TO THREE YEARS.

3            THERE WOULD ALSO FOR EACH COUNT OF CONVICTION WOULD BE

4  A SPECIAL ASSESSMENT OF $100.  SO IF YOU TAKE INTO ACCOUNT ALL

5  SIX COUNTS THAT WOULD BE A TOTAL OF $600.

6            THERE IS NO -- THERE IS NO RESTITUTION HERE, RIGHT?

7            MR. ANTON:  CORRECT.

8            THE COURT:  OKAY.  SO THOSE -- THOSE ARE THE PENALTIES

9  FOR EACH OF THE COUNTS.  SO I HAVE KIND OF GIVEN YOU THE

10 OVERALL VIEW OF ALL OF THE COUNTS COMBINED.

11           WOULD YOU LIKE ME TO GO IN DETAIL AS TO EACH COUNT OR

12 DO YOU UNDERSTAND THAT'S THE WHOLE PICTURE FOR ALL SIX COUNTS?

13           THE DEFENDANT:  I GET THE WHOLE PICTURE.

14           THE COURT:  YOU GET THE WHOLE PICTURE.  OKAY.

15           SO YOUR EXPOSURE COULD BE UP TO LIFE IMPRISONMENT, THE

16 MAXIMUM OF 20 YEARS, THE SPECIAL ASSESSMENT AND FINE AND

17 SUPERVISED RELEASE ARE UNDERSTOOD.

18           NOW, AS I SAID BEFORE FOR THESE COUNTS IF YOU'RE FOUND

19 GUILTY IT WOULD BE UP TO THE COURT TO DECIDE WHETHER TO IMPOSE

20 ON THE CONVICTION COUNTS THE SENTENCE TO BE SERVED CONCURRENTLY

21 FOR ALL OF THE COUNTS OR CONSECUTIVELY.

22           DO YOU UNDERSTAND THAT?  DO YOU HAVE QUESTIONS ABOUT

23 WHAT THAT MEANS?

24           THE DEFENDANT:  I UNDERSTAND.

25           THE COURT:  ALL RIGHT.

1          THEN DO YOU UNDERSTAND ALSO THERE WAS A REFERENCE TO

2  THE ADVISORY SENTENCING GUIDELINES.  DO YOU HAVE AN

3  UNDERSTANDING OF WHAT THOSE ARE?  WOULD YOU LIKE ME TO GO INTO

4  AN EXPLANATION OF THOSE?

5          THE DEFENDANT:  NO.  I UNDERSTAND.

6          THE COURT:  YOU UNDERSTAND.  YOU'RE CURRENTLY SERVING

7  A SENTENCE IN ANOTHER CASE, CORRECT?

8          THE DEFENDANT:  IN THE CASE CLOSELY ASSOCIATED WITH

9  THIS ONE.

10          THE COURT:  IN ANOTHER CASE WHERE YOU WERE SENTENCED

11  ALREADY.  SO YOU HAVE ALREADY GONE THROUGH THE SENTENCING

12  PROCESS, THE FEDERAL SENTENCING PROCESS, CORRECT?

13          THE DEFENDANT:  YES.

14          THE COURT:  ALL RIGHT.

15          SO IS THERE ANY QUESTION IN YOUR MIND AT THIS POINT IN

16  TIME REGARDING WHAT THE SENTENCING PROCESS WOULD BE IN THIS

17  CASE SHOULD YOU BE FOUND GUILTY OF ONE OR MORE OF THE COUNTS IN

18  THE INDICTMENT?

19          THE DEFENDANT:  NO.

20          THE COURT:  NOW, DO YOU UNDERSTAND THAT IF YOU ELECT

21  TO REPRESENT YOURSELF YOU ARE ON YOUR OWN AND THE JUDGE -- THE

22  PRESIDING JUDGE, OR MYSELF, OR ANY JUDICIAL OFFICER CANNOT

23  ADVISE YOU ON HOW TO TRY THE CASE.

24          DO YOU UNDERSTAND THAT?

25          THE DEFENDANT:  I FEEL THAT AS IF I'M ALREADY ON MY

1  OWN RIGHT NOW.

2         THE COURT:  WELL, I JUST WANT TO MAKE SURE THAT YOU

3  UNDERSTAND WHAT IT ENTAILS BECAUSE THIS IS A REALLY SERIOUS

4  DECISION THAT YOU NEED TO MAKE AND I NEED TO MAKE SURE THAT YOU

5  ARE FULLY INFORMED.

6         SO REGARDLESS OF HOW YOU FEEL RIGHT NOW, EVEN THOUGH

7  YOU HAVE REPRESENTATION, YOU WOULD BE TOTALLY ON YOUR OWN IF

8  YOU GO FORWARD WITH THIS DECISION TO REPRESENT YOURSELF.

9         DO YOU UNDERSTAND THAT?

10         THE DEFENDANT:  YES.  MAY I SPEAK?

11         THE COURT:  OKAY.  NOW, ARE YOU FAMILIAR WITH THE

12  FEDERAL RULES OF EVIDENCE?

13         THE DEFENDANT:  NO.

14         THE COURT:  SO THOSE RULES GOVERNOR WHAT CAN BE

15  INTRODUCED AT TRIAL.  IN REPRESENTING YOURSELF IF THAT'S HOW IT

16  ENDS UP YOU WOULD NEED TO BECOME FAMILIAR WITH THE FEDERAL

17  RULES OF EVIDENCE SO THAT AT TRIAL YOU WOULD KNOW WHAT CAN AND

18  WHAT CANNOT BE INTRODUCED.

19         AND NO MATTER WHETHER YOU ARE REPRESENTED BY COUNSEL

20  OR YOU ARE NOT THOSE RULES OF EVIDENCE GOVERNOR THE TRIAL.

21  THERE ARE NO EXCEPTIONS MADE FOR SOMEBODY WHO IS REPRESENTING

22  THEMSELVES.

23         SO IN ESSENCE YOU WOULD HAVE TO LEARN THE RULES OF

24  EVIDENCE AND FIGURE OUT HOW THEY APPLIED TO YOUR CASE.  THAT

25  WOULD BE A BURDEN THAT YOU WOULD HAVE TO UNDERTAKE IF YOU WERE

1  TO REPRESENT YOURSELF AT TRIAL.

2      IS THAT A BURDEN THAT YOU THINK THAT YOU ARE CAPABLE

3  OF UNDERTAKING?

4      THE DEFENDANT:  I DON'T BELIEVE CAPABILITY PLAYS A

5  PART.  I BELIEVE I'M FORCED INTO ALL OF THIS.  SO IS THIS

6  SOMETHING I'M KNOWINGLY WILLING TO DO?

7      YES.  AS I'M FORCED TO YES, I UNDERSTAND -- I

8  UNDERSTAND THE RISKS THAT ENTAIL AS FAR AS WHAT WOULD BE

9  OBLIGED UPON ME AS FAR AS SUCH RULES AND (INAUDIBLE)

10     THE COURT:  RIGHT.  THAT IS THE ESSENCE OF KNOWING, OF

11  MAKING A KNOWING DECISION IS TO KNOW WHAT YOU'RE GETTING

12  YOURSELF INTO.  THAT'S WHY I'M GOING INTO THIS LEVEL OF DETAIL

13  WITH YOU.

14     ONE OF THE MATTERS THAT YOU WOULD HAVE TO UNDERTAKE IS

15  TO FIGURE OUT, LET'S SAY THAT YOU GO FORWARD REPRESENTING

16  YOURSELF, THE DAY OF TRIAL COMES YOU WOULD HAVE TO BE ABLE TO

17  FIGURE OUT WHAT CAN BE ADMITTED AT TRIAL, WHAT CANNOT BE

18  ADMITTED AT TRIAL.

19     IF THE GOVERNMENT PUTS ON SOMETHING THAT THE FEDERAL

20  RULES DON'T ALLOW THEN YOU WOULD HAVE TO OBJECT TO THAT TO

21  PRESERVE YOUR RIGHTS.  IF YOU DON'T OBJECT THEN YOU WAIVE THOSE

22  RIGHTS.

23     IF YOU TRY TO PUT ON EVIDENCE YOURSELF YOU WOULD HAVE

24  TO KNOW WHAT EVIDENCE YOU CAN OR CANNOT PUT ON, BECAUSE IF YOU

25  TRY TO PUT ON SOMETHING THAT IS NOT ALLOWABLE THAT YOU WERE

1  COUNTING ON THE GOVERNMENT OBJECTS, THE GOVERNMENT PREVAILS,

2  THEN THAT PIECE OF EVIDENCE YOU WERE COUNTING ON DOESN'T GET

3  IN.

4         THIS IS HOW A TRIAL WORKS, WITH EVIDENCE THAT IS PUT

5  IN OR NOT.  BUT IT'S JUST NOT ANY OLD EVIDENCE THAT YOU FEEL

6  LIKE PUTTING IS WHAT QUALIFIES UNDER THE RULES.

7         SO THAT WOULD BE A BURDEN THAT YOU WOULD HAVE TO

8  UNDERTAKE TO LEARN THE RULES OF EVIDENCE SO YOU WOULD KNOW WHAT

9  CAN AND CANNOT BE ADMITTED AT TRIAL.

10        IS THAT A BURDEN THAT YOU'RE WILLING TO UNDERTAKE AND

11  DO YOU UNDERSTAND THE MAGNITUDE OF THAT EFFORT THAT WOULD BE

12  REQUIRED ON YOUR PART?

13        THE DEFENDANT:  YES, JUDGE.

14        THE COURT:  ARE YOU FAMILIAR WITH THE FEDERAL RULES OF

15  CRIMINAL PROCEDURE?

16        THE DEFENDANT:  NO.

17        THE COURT:  OKAY.  THOSE RULES GOVERNOR THE WAY A

18  CRIMINAL ACTION IS TRIED IN FEDERAL COURT.  YOU WOULD BE BOUND

19  BY THOSE RULES AND THEY WOULD NOT BE RELAXED FOR YOUR BENEFIT.

20        JUST LIKE WITH THE FEDERAL RULES OF EVIDENCE THAT

21  GOVERN WHAT EVIDENCE DOES GET ALLOWED IN THE TRIAL AND DOES NOT

22  GET ALLOWED, THE FEDERAL RULES OF CRIMINAL PROCEDURE DICTATE

23  HOW THE TRIAL PROCEEDS, WHAT STEPS ARE TAKEN, HOW THE JURY IS

24  SELECTED, WHAT RULINGS THE JUDGE MAKES AT THE CLOSE OF THE

25  GOVERNMENT'S EVIDENCE AND THE CLOSE OF THE DEFENSE EVIDENCE, IF

1  ANY, WHAT RULES THERE ARE REGARDING WHETHER THERE HAS BEEN A

2  MISTRIAL OR NOT.

3      ALL OF THOSE THINGS ARE GOVERNED BY THE FEDERAL RULES

4  OF EVIDENCE THAT YOU ARE NOT FAMILIAR WITH.  YOU WOULD HAVE TO

5  LEARN THOSE RULES, FIGURE OUT HOW THEY APPLY TO YOUR CASE AND

6  THIN BE ABLE IN REAL TIME AT TRIAL TO DO SOMETHING WHICH

7  LAWYERS HAVE BEEN TRAINED TO DO DAY IN AND DAY OUT, WHICH IS

8  OBJECT, PRESERVE RIGHTS, OR MAKE SURE THAT THEY COMPLIED WITH

9  THE RULES.

10     SO IN ADDITION TO THE BURDEN OF THE RULES OF EVIDENCE

11 YOU WOULD BE UNDERTAKING THE BURDEN OF LEARNING AND APPLYING

12 THE RULES OF CRIMINAL PROCEDURE.

13     THOSE ARE SORT OF LIKE THE COOK BOOKS, LIKE THE HOW TO

14 MANNER BY WHICH WE CONDUCT TRIALS SO THAT THE TRIAL GOES

15 FORWARD PROPERLY AND EVERYBODY -- YOU KNOW, YOUR RIGHTS AND THE

16 GOVERNMENT'S RIGHTS ARE PROTECTED.

17     HAVE YOU GIVEN ANY CONSIDERATION TO THE FACT THAT YOU

18 WOULD HAVE TO LEARN THESE RULES BEFORE YOU COULD REPRESENT

19 YOURSELF?

20     THE DEFENDANT:  NOT MUCH.

21     THE COURT:  IS THIS SOMETHING THAT YOU WOULD LIKE TO

22 BECOME MORE AWARE OF AND BECOME MORE COGNIZANT OF IN ORDER TO

23 MAKE A MORE INFORMED DECISION, MAYBE HAVE YOUR ATTORNEYS

24 EXPLAIN THIS TO YOU IN BETTER DETAIL?

25     THE DEFENDANT:  I'M PRETTY SURE THAT THESE RULES AND

1  PROCEDURES YOU MENTIONED I BELIEVE THEY'RE AVAILABLE IN THE LAW
2  LIBRARY.

3  THE COURT:  THEY ARE AVAILABLE IN THE LAW LIBRARY.
4  ONE THING IS THERE BEING AVAILABLE AND ONE THING IS READING
5  THEM, UNDERSTANDING THEM AND LEARNING HOW TO APPLY THEM.

6  ANYBODY CAN JUST READ ANYTHING LIKE ANYBODY CAN -- I
7  DON'T KNOW, MAYBE I CAN GIVE YOU AN EXAMPLE.

8  ANYBODY CAN READ A COOKBOOK.  I'M A TERRIBLE COOK.  I
9  COULD READ A COOKBOOK AND I WOULD PROBABLY BURN THE FOOD.  A
10  CHEF READS A COOKBOOK AND KNOWS EXACTLY HOW TO APPLY IT AND
11  COME OUT WITH A MASTERPIECE.

12  I AM COMPARING YOUR ATTORNEYS TO THE CHEF.  I AM
13  COMPARING YOU TO THE TERRIBLE COOK.

14  THE DEFENDANT:  I THINK THIS ISN'T A VERY GOOD
15  COMPARISON.

16  THE COURT:  I KNOW.  IT'S TERRIBLE.  I'M MAKING MYSELF
17  LOOK TERRIBLE SAYING I'M SUCH A BAD COOK, RIGHT?

18  THE DEFENDANT:  YES.

19  THE COURT:  BUT I'M JUST TELLING YOU BECAUSE YOU DON'T
20  HAVE THAT KNOWLEDGE ON HOW APPLY THEM, THE RULES IS WHAT I WANT
21  TO IMPRESS UPON YOU, THAT IT'S NOT JUST A MATTER OF READING IT
22  AND SAYING, OKAY.  THIS IS WHAT I'M GOING TO DO.  YOU NEED TO
23  UNDERSTAND AND KNOW HOW TO APPLY IT

24  THE COURT:  DOES THIS HELP YOU UNDERSTAND A LITTLE BIT
25  BETTER WHAT I'M TRYING TO EXPLAIN TO YOU?

 1          THE DEFENDANT:  YES.  I UNDERSTOOD THE ANALOGY AND THE

 2   INFORMATION YOU MENTIONED.

 3          THE COURT:  ALL RIGHT.

 4          ALL RIGHT.  AND AGAIN AS I SAID, WITH REGARD TO THE

 5   RULES OF EVIDENCE AND THE RULES OF CRIMINAL PROCEDURE THEY

 6   WOULD NOT BE MADE ANY EASIER OR LESS EFFECTIVE JUST BECAUSE THE

 7   DEFENDANT IS REPRESENTING HIMSELF.  THEY APPLY WITH EQUAL

 8   STRENGTH REGARDLESS OF REPRESENTATION.

 9          SO YOU WOULDN'T GET A PASS LIKE -- AGAIN AT THE RISK

10   OF BEING SILLY, I BURN MY FOOD SO I TO GO THE GROCERY STORE,

11   BUY ANOTHER SET OF CHICKEN, OR WHATEVER, AND I COOK IT AGAIN,

12   RIGHT?  I GOT A PASS TO MYSELF.  YOU DON'T GET A PASS AT TRIAL.

13          DO YOU UNDERSTAND THIS?  IT'S ONE SHOT ONLY.  MAKE

14   SENSE?

15          THE DEFENDANT:  YES.

16          THE COURT:  ALL RIGHT.

17          OKAY.  NOW, BASED ON WHAT I KNOW, BASED ON MY YEARS OF

18   PRACTICE, BASED ON MY YEARS AS A JUDGE HAVING SEEN MANY CASES,

19   I THINK I AM NOT OVERSTATING THE FACT THAT A TRAINED LAWYER

20   WOULD DEFEND YOU FAR BETTER THAN YOU COULD DEFEND YOURSELF.

21          IT WOULD BE UNWISE FOR YOU TO TRY TO REPRESENT

22   YOURSELF BECAUSE YOU'RE NOT FAMILIAR WITH THE LAW, YOU'RE NOT

23   FAMILIAR WITH COURT PROCEDURE, YOU'RE NOT FAMILIAR WITH THE

24   RULES OF EVIDENCE.

25          SO I WOULD STRONGLY URGE YOU TO THINK IN LIGHT OF

1  EVERYTHING I HAVE TOLD YOU TO POTENTIALLY RECONSIDER OR

2  REEVALUATE THIS DECISION THAT YOU'RE MAKING WHERE YOU WANT TO

3  REPRESENT YOURSELF.

4          I AM NOT SURE -- YOU'VE ALREADY WENT THROUGH A TRIAL

5  WHERE YOU HAD REPRESENTATION.  I AM NOT SURE WHAT IS MAKING YOU

6  WANT TO REPRESENT YOURSELF IN THIS CASE.  YOU MADE SOME COMMENT

7  THAT YOU FEEL LIKE YOU'RE ON YOUR OWN.

8          AND LET ME -- WITHOUT IMPINGING ON ANYTHING, IS YOUR

9  ISSUE BASED ON YOUR CURRENT REPRESENTATION AND WOULD -- HAS

10 THERE BEEN ANY ISSUE RAISED REGARDING APPOINTING OTHER COUNSEL?

11 IS THAT SOMETHING THAT HAS BEEN CONSIDERED?

12          AND I'LL HEAR FROM YOU IN A MINUTE.

13          LET ME HEAR FROM MISS BECKER.

14          MS. BECKER:  YES, YOUR HONOR.

15          THAT WAS RAISED AT THE STATUS CONFERENCE ON JANUARY

16 2ND.  JUDGE MARTINEZ AT THAT TIME DENIED MR. BAPTISTE'S REQUEST

17 FOR SUBSTITUTION OF COUNSEL, AND IT IS AT THAT POINT THAT

18 MR. BAPTISTE REQUESTED TO PROCEED PRO SE.

19          THE COURT:  LET ME ASK YOU THIS QUESTION,

20 MR. BAPTISTE.

21          IF THAT ISSUE OF HAVING DIFFERENT COUNSEL REPRESENT

22 YOU, WOULD THAT ALLEVIATE YOUR CONCERNS, AGAIN WITHOUT

23 IMPINGING IN ANY WAY WITH YOUR RELATIONSHIP WITH YOUR CURRENT

24 COUNSEL?

25          THE DEFENDANT:  YES.  IT WOULDN'T JUST ALLEVIATE, IT

1  WOULD BE A RELIEF IN ITSELF.

2          THE COURT:  SO FROM YOUR POINT OF VIEW IF YOU HAD --

3          THE DEFENDANT:  SOMEBODY DIFFERENT THAN ABIGAIL BECKER

4  IT WOULD BE BETTER.

5          THE COURT:  ALL RIGHT.  WELL, GENERALLY -- LET ME JUST

6  SAY THIS.

7          GENERALLY WHEN YOU GET APPOINTED COUNSEL YOU DON'T

8  NECESSARILY GET TO PICK AND CHOOSE WHO YOU WANT.  BUT WHEN THE

9  RELATIONSHIP BECOMES IN SOME WAY DIFFICULT OR IN SOME WAY

10  INTERFERES WITH THE -- WITH THE REPRESENTATION THEN WE CONSIDER

11  THAT.  AND IN YOUR CASE YOU WOULD BE APPOINTED A PRIVATE

12  ATTORNEY UNDER THE CRIMINAL JUSTICE ACT TO REPRESENT YOU.

13          WOULD THAT BE A PREFERABLE ALTERNATIVE FOR YOU RATHER

14  THAN GO ALONE AND HAVING TO LEARN THESE RULES AND BURN THE

15  CHICKEN?

16          THE DEFENDANT:  YES.

17          THE COURT:  ALL RIGHT.  LET ME HEAR FROM THE

18  GOVERNMENT ANY ISSUES REGARDING SUBSTITUTE COUNSEL.

19          MR. ANTON:  JUDGE, I WASN'T PART OF THAT DISCUSSION.

20  IT WAS -- WHEN DEFENSE COUNSEL THROUGH THE DEFENDANT FILED A

21  MOTION TO TERMINATE REPRESENTATION I WAS ORDERED OUT OF THE

22  COURTROOM.  SO I DON'T KNOW WHAT THE PROBLEM IS.

23          I DO NOT KNOW WHAT HAPPENED OR WHAT TRANSPIRED BETWEEN

24  JUDGE MARTINEZ, DEFENSE COUNSEL AND THE DEFENDANT.  SO I HAVE

25  ABSOLUTELY NO INFORMATION TO PROVIDE THE COURT AS TO WHAT THE

1   PROBLEM IS OR HOW IT MIGHT BE RESOLVED.

2         THE COURT:  DOES THE GOVERNMENT HAVE ANY -- I DID NOT

3   MEAN FOR YOU TO MAKE ANY COMMENTS OF THAT.  OBVIOUSLY YOU ARE

4   NOT PRIVY TO THAT.  I GUESS I WAS NOT ARTFUL IN PHRASING MY

5   QUESTION.

6         DOES THE GOVERNMENT HAVE CONCERNS IN TERMS OF TIMING,

7   IN TERMS OF, YOU KNOW, SEQUENCING, THINGS LIKE THAT, THAT WOULD

8   AFFECT THE TRIAL SHOULD WE GO WITH NEW COUNSEL?

9         MR. ANTON:  NO, JUDGE.  THE DEFENDANT IS CURRENTLY

10  SERVING A SENTENCE.  HE'S NOT DUE TO EVEN BE RELEASED UNTIL

11  2022.

12        THE CASE DOES NOT REVOLVE AROUND NECESSARILY THE

13  AVAILABILITY OF ANY KIND OF CIVILIAN WITNESSES.  SO TIME

14  ESSENTIALLY IS NOT OF THE ESSENCE SO I WOULD CERTAINLY LEAVE

15  THAT UP TO THE COURT.

16        I MEAN, IF YOU'RE ASKING ME MY OPINION FROM WHAT I'VE

17  HEARD HE CERTAINLY WOULD RATHER HAVE NEW COUNSEL AS OPPOSED TO

18  REPRESENTING HIMSELF, BUT I LEAVE THAT TO THE COURT'S

19  DISCRETION.

20        THE COURT:  RIGHT.

21        SO FROM LOGISTICS THERE IS NO ISSUES --

22        MR. ANTON:  THAT'S CORRECT.

23        THE COURT:  -- FROM THE GOVERNMENT.

24        MR. ANTON:  NO ISSUES REGARDING LOGISTICS.  IF THE

25  CASE WAS EVEN CONTINUED OR NEW COUNSEL WAS APPOINTED.

1       THE COURT:  MISS BECKER?

2       MS. BECKER:  YES, YOUR HONOR.

3       THE COURT:  SO YOU TRIED THAT ROUTE, IT WAS DENIED

4   BEFORE.  OBVIOUSLY JUDGE MARTINEZ DID NOT HAVE BEFORE HIM THE

5   INFORMATION THAT I HAVE NOW.

6       BASED ON THE REPRESENTATIONS MADE IN THIS HEARING DOES

7   THE PUBLIC DEFENDER FEEL THAT THEY CAN CONTINUE TO EFFECTIVELY

8   REPRESENT MR. BAPTISTE?

9       MS. BECKER:  YOUR HONOR, OF COURSE WE SERVE AT THE

10  COURT'S DISCRETION AND IF SO ORDERED WE WOULD CONTINUE TO

11  REPRESENT MR. BAPTISTE TO THE BEST OF OUR ABILITIES.

12      I THINK AT THIS POINT -- I THINK IT'S PROBABLY CLEAR

13  AND NOT OVERSTEPPING ANY BOUNDS TO SAY THAT COMMUNICATIONS HAVE

14  BROKEN DOWN BETWEEN OURSELVES AND -- BETWEEN MR. BAPTISTE AND

15  MYSELF.

16      AS THE COURT NOTED THE CHARGES AGAINST HIM ARE

17  POTENTIALLY VERY SERIOUS AND CARRY POTENTIALLY VERY SERIOUS

18  CONSEQUENCES AND I THINK MR. BAPTISTE WOULD BENEFIT FROM THE

19  ADVICE AND COUNSEL OF AN ATTORNEY IN WHOM HE DOES HAVE

20  CONFIDENCE.  AND HE HAS EXPRESSED THAT HE DOES NOT HAVE

21  CONFIDENCE IN MY REPRESENTATION OF HIM.

22      SO WHILE WE WOULD CONTINUE TO REPRESENT HIM IF SO

23  ORDERED, I THINK HE COULD BENEFIT FROM THE ASSISTANCE OF

24  DIFFERENT COUNSEL AT THIS POINT BECAUSE COMMUNICATIONS HAVE

25  ESSENTIALLY BROKEN DOWN.

1       THE COURT:  MR. BAPTISTE, IT SEEMS TO ME THAT A BETTER

2  COURSE OF ACTION WOULD BE TO APPOINT A PRIVATE ATTORNEY TO

3  REPRESENT YOU UNDER THE CRIMINAL JUSTICE ACT SO THAT YOU CAN

4  HAVE THE REPRESENTATION AND BE ABLE TO PROCEED TO TRIAL

5  PROPERLY.

6       LET ME JUST CAUTION YOU, SIR, THAT THIS SORT OF LIKE A

7  BOOM OR A GRATUITY THAT WOULD BE GRANTED YOU BECAUSE GENERALLY

8  YOU HAVE THE RIGHT TO HAVE REPRESENTATION BUT YOU DO NOT HAVE

9  THE RIGHT TO PICK AND CHOOSE WHO REPRESENTS YOU.

10       I WILL APPOINT SOMEBODY FROM OUR CJA PANEL.  YOU WILL

11  NEED TO MAKE EVERY EFFORT TO WORK WITH THAT ATTORNEY WHO WILL

12  HAVE YOUR BEST INTERESTS AT HEART AND TRY TO ZEALOUSLY

13  REPRESENT YOU SO THAT YOU CAN GET THROUGH THIS PROCESS AT LEAST

14  WITH PROFESSIONAL HELP AND, YOU KNOW, THE BEST ASSISTANCE THAT

15  YOU CAN OBTAINED.

16       ARE YOU REQUESTING THEN FORMALLY TO HAVE NEW

17  COUNSEL -- SUBSTITUTE COUNSEL REPRESENT YOU IN THIS MATTER?

18       THE DEFENDANT:  YES.

19       THE COURT:  ALL RIGHT.  I WILL THEN APPOINT NEW

20  COUNSEL.  UPON THAT APPOINTMENT THEN THE PUBLIC DEFENDER WILL

21  BE RELIEVED.

22       I WILL ASK THAT THE PUBLIC DEFENDER COOPERATE WITH NEW

23  COUNSEL.  I KNOW THIS CASE INVOLVES CIPA AND SO ON.  I DON'T

24  KNOW IF IT'S GOTTEN TO THAT STAGE YET.  IT LOOKS PREMATURE.

25  BUT WHATEVER YOU HAVE, IF YOU WOULD PLEASE PASS IT ON SO THAT

1 | THE TRANSITION WILL BE AS SMOOTH AS POSSIBLE.

2 |          MS. BECKER:  YES, YOUR HONOR.

3 |          THE COURT:  ALL RIGHT?

4 |          ALL RIGHT.  WE'LL ISSUE THE SUBSTITUTE COUNSEL ORDER.

5 | AND THEN, OF COURSE -- WHAT IS THE CURRENT TRIAL DATE?

6 |          MR. ANTON:  I THINK IT'S APRIL, MAY --

7 |          THE DEFENDANT:  -- THE 13TH.

8 |          (SEVERAL PEOPLE TALKING AT THE SAME TIME)

9 |          MS. BECKER:  WE'RE SET FOR MAY 13TH CURRENTLY, YOUR

10 | HONOR.

11 |          THE COURT:  SO THAT GIVES US A LITTLE BIT OF A

12 | BREATHER AND THEN WE'LL SEE HOW QUICKLY NEW COUNSEL CAN GET UP

13 | TO SPEED.

14 |          MS. BECKER:  THANK YOU, YOUR HONOR.

15 |          THE COURT:  THANK YOU VERY MUCH.

16 |          GOOD LUCK TO YOU, MR. BAPTISTE.

17 |          THE DEFENDANT:  THANK YOU.

18 |          THE CLERK:  ALL RISE.

19 |          THE COURT IS ADJOURNED.

20 |                         - - -

21 |

22 |

23 |

24 |

25 |

1

2

3                          C E R T I F I C A T E

4

5

6  UNITED STATES OF AMERICA

7  SOUTHERN DISTRICT OF FLORIDA

8

9

10        I, CARL SCHANZLEH, OFFICIAL COURT REPORTER OF THE UNITED

11  STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA, DO

12  HEREBY CERTIFY THAT THE FOREGOING 22 PAGES CONSTITUTE A TRUE

13  TRANSCRIPT OF THE PROCEEDINGS HAD BEFORE THE SAID COURT HELD IN

14  THE CITY OF MIAMI, FLORIDA, IN THE MATTER THEREIN STATED.

15        IN TESTIMONY WHEREOF, I HEREUNTO SET MY HAND ON THIS

16  23RD DAY OF JUNE 2019.

17

18                              /S/CARL SCHANZLEH
                               CARL SCHANZLEH, RPR-CM
19                              CERTIFIED COURT REPORTER
                               9960 SW 4TH STREET
20                              PLANTATION, FL 33324
                               TELEPHONE 954 424-6723
21

22

23

24

25