UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-20613-CR-MARTINEZ

UNITED STATES OF AMERICA,

        Plaintiff,

v.

SAMUEL BAPTISTE,

        Defendant.
_____/

## MOTION FOR SPECIFIC BRADY, GIGLIO AND KYLES INFORMATION

Samuel Baptiste, through undersigned counsel, hereby requests the following specific exculpatory and impeaching material regarding issues of guilt or punishment, and all statements and/or promises, express or implied, made to any government witnesses in exchange for their testimony in this case, and all other information which could arguably be used for the impeachment of any government witnesses pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and *Kyles v. Whitley*, 514 U.S.419 (1995) and their progeny.

Mr. Baptiste requests the prompt production of these materials prior to trial so that the information maybe effectively used. See, e.g., *United States v. Bueno-Sierra*, 99 F.3d 375, 379 (11th Cir. 1996) (indicating that late disclosure of materials is grounds for reversal if a defendant can show prejudice, such as that it came so late that the material could not be effectively used, and noting that the court did not condone such a practice) . Mr. Baptiste includes within this request not only evidence that would be admissible at trial, but also information that my lead to the discovery of admissible evidence. *Wright v. Hopper*, 169 F.3d 695, 703 & n.1 (11th Cir. 1999); *Spaziano v. Singletary*, 36 F.3d 1028, 1044 (11th Cir.1994).

In light of the expansive nature of the investigation of this case and the close involvement of law enforcement and other officials from the United States and other countries, Mr. Baptiste also includes within this request any Brady/Giglio/Kyles material possessed by any law enforcement or other officials involved in this case, including, but not limited to, materials possessed by:

**(A)** other federal, state, or local officials involved in this case and related cases;

**(B)** other federal agencies (including all of their components and their predecessors and successors), including but not limited to the Central Intelligence Agency, National Security Agency, Department of Homeland Security, INS/BICE/ICE, Terrorist Screening Center, Terrorist Screening Database, the Department of Transportation, Transportation Security Administration, Federal Aviation Administration, National Transportation Safety Board, INTERPOL, National Counterterrorism Center, Department of Defense, Defense Intelligence Agency, U.S. Department of Justice, Federal Bureau of Investigation, U.S. Department of the Treasury, OFAC, U.S. Department of State, U.S. Secret Service, and the U.S. Postal Service; and

**(C)** foreign government and law enforcement officials (including but not limited to any requests that the government must make through the mutual legal assistance treaty to obtain these materials).

See *Kyles v. Whitley*, 514 U.S. 419, 437 (1995) ("[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the Case…"); *McMillian v. Johnson*, 88 F.3d 1554, 1567-69 (11th Cir. 1996), amended in nonrelevant part by, 101 F.3d 1363 (11th Cir. 1996); *United States v. Wood*, 57 F.3d 733, 737 (9th Cir. 1995); *United States v. Brooks*, 966 F.2d 1500, 1502-05 (D.C. Cir. 1992).

Based on all the foregoing, Mr. Baptiste makes the following specific requests to the government:

1. If the government investigation sought to determine if there has been any direct communication between Mr. Baptiste and representatives or associates of ISIS and there have been negative results.

2. Any verbal, written, or in-person interaction between Mr. Baptiste and confirmed or suspected ISIS representatives in which they solicit action from him and he refuses or is silent.

3. If the government investigation sought to determine if explosives manuals allegedly distributed by Mr. Baptiste were obtained or used by representatives of or associates of ISIS, and there has been a negative result.

4. The existence and substance of any payments, promises of immunity, leniency, preferential treatment, or other inducements made to any confidential human source (CHS) as a consequence of his/her involvement in the investigation of Mr. Baptiste.

5. The existence and substance of any payments, promises of immunity, leniency, preferential treatment, or other inducements made to any CHS involved in the investigation of Mr. Baptiste, as a consequence of his/her involvement in other investigations.

6. Any agreement as to any future payments, promises of immunity, leniency, preferential treatment, or other inducements made to any CHS as a consequence of his/her involvement in the investigation of Mr. Baptiste and under what conditions those benefits would be provided.

7. The existence and substance of any payments, promises of immunity, leniency, preferential treatment, or other inducements made to any other prospective government witness.

8. The existence and substance of any payments, loans, gifts, or promises of payments, loans, or gifts from the undercover employee (UCE) to Mr. Baptiste.

9. A record of prior convictions of any CHS involved in this investigation, including but not limited to the offenses charged, the circumstances of the offense(s), the resolution of the charges, and any punishment imposed.

10. Whether any CHS or UCE involved in this investigation has ever provided testimony under oath regarding his/her undercover activities on behalf of any United States government agency. If so, when, where, and in what matters?

11. Whether any CHS or UCE involved in this investigation had any arrests, civil proceedings, civil judgments, or bankruptcy proceedings that were pending against him/her either during the investigation of Mr. Baptiste or at present.

12. A copy of any and all written agreements, including those proposed but not executed by both parties, between any CHS or UCE involved in this investigation and any agency of the United States government regarding his/her use as a CHS or UCE.

13. The content of any oral agreements or understandings between any CHS or UCE involved in this investigation and any agency of the United States government regarding his/her use as a CHS or UCE.

14. A copy of any written instructions provided to any CHS or UCE involved in this investigation regarding his/her conduct in the investigation of Mr. Baptiste.

15. Witness interview notes and reports created by government agents which include but are not limited to inconsistent statements, exculpatory statements, and contradictory statements that undermine any witness's credibility, material to guilt or to punishment or undermines the credibility of government witnesses.

16. All Telegram channels in pdf form the government believes Mr. Baptiste created from their date of creation until their last date of use. Some of the channels have already been produced in pdf format, but not in their entirety--e.g. the UCE contact logs state that the Dhikrul Jihad wal-qasas channel was created on 9/22/16, but the pdf printout does not begin until 10/15/16.

17. Who was the administrator/moderator on the Telegram channels believed to have been created/operated by Mr. Baptiste.

18. Whether any of the Telegram channels believed by the government to have been created/operated by Mr. Baptiste are still operative.

19. Whether any posts were made to any of the Telegram channels believed to have been operated/created by Mr. Baptiste following his arrest on 11/9/16.

20. All Telegram private chats between Mr. Baptiste and all UCEs/CHSs.

21. All Telegram channels to which Mr. Baptiste subscribed.

22. Any recommendation, opinion, findings, or information made or obtained by federal prosecutors, government personnel, or law enforcement authorities investigating the case that the prosecution of Mr. Baptiste or any of the allegations against Mr. Baptiste was disputed, questionable, or unwarranted.

23. Any information in which the government believes that a prospective witness has made untruthful or deceptive statements to law enforcement authorities, a grand jury, or in a court of law, or before any other governmental body; any information where the government has impeached the testimony of any prospective witness ; any information where the government has taken the position in court that a prospective witness was deceptive or untruthful; and any information that a prospective witness has testified inconsistently to the anticipated testimony in the instant case . See, e.g., *Mesarosh v. United States*, 352 U.S. 1 (1956); *United States v. Espinosa-Hernandez*, 918 F.2d 911, 913-14 (11" Cir. 1990).

24. The defense requests that the government examine the personnel files and any other files within its custody, care or control, or which could be obtained by the government, for all testifying witnesses,
including testifying officers and agents who may have been controlling or contacting the confidential informants in this case. Mr. Baptiste requests that these filed be reviewed by the government attorney for evidence or perjurious conduct or other like dishonesty, or any other material relevant to impeachment, or any information that is exculpatory. See, e.g., *Espinosa-Hernandez*, 918 F.2d at 914; *United States v. Deutsch*,475 F.2d 55, 57-58 (5th Cir. 1973),

4

overruled on other grounds, *United States v. Henry*, 749 F.2d 203 (5th Cir. 1984); United States v. Garrett, 542 F.2d 23, 25-27 (6th Cir. 1976).

25. Any information, whether or not memorialized in a written memorandum or report, concerning favorable treatment or other inducements (including, but not limited to, the possibility of foregoing prosecution, lesser charges, reduced sentencing, assistance with immigration/deportation matters (with foreign or domestic authorities), and immunity) or other compensation given to, or promised to, any government witness (or any family member, friend, associate) in exchange for his or her assistance to foreign, federal, or state authorities in this or any other case . This should include the date, exact nature, and identity of the person or entity providing such compensation. See, e.g. *United States v. Bagley*, 473 U.S. 667-683-84 (1985); *United States v. Arnold*, 117 F .3d 1308, 1315-18 (11th Cir. 1997); *United States v. Williams*, 954 F.2d 668, 671-72 (11th Cir. 1992); *Haber v. Wainwright*, 756 F.2d 1520, 1523-24 (11th Or. 1985); see also *United States v. Partin*, 493 F.2d 750, 757-60 (5th Cir. 1974); Eleventh Circuit Pattern Jury Instructions (Criminal Cases), Special Instruction 1 .1, 2003 ("For example, a paid informer, or a witness who has been promised that he or she will not be charged or prosecuted, or a witness who hopes to gain more favorable treatment in his or her own case, may have a reason to make a false statement because the witness wants to strike a good bargain with the Government.").

26. Financial and immunity and other arrangements with any potential
government witness including but not limited to domestic and foreign agents, investigators, confidential informants, cooperating witnesses, and all other fact witnesses, translators, and transcriptionists, and expert witnesses. See, e.g., *Williams*, 954 F .2d at 671-72.

27. All national security letters ("NSLs"), all records produced in response to such NSLs, any evidence derivative of the national security letters, and notice as to whether any evidence in this case was derived from a national security letter. See *Doe v. Ashcroft*, 334 F.Supp. 2nd 471 (S.D.N.Y. 2004). Mr. Baptiste requests such information so that he may reasonably determine whether, for example, he may assert a violation of his constitutional rights.

28. Mr. Baptiste requests the following information concerning the use of informants, including all Brady/Giglio, Kyles and Jencks Acts material. See *United States v. Brumel-Alvarez*, 991 F.2d 1452, 1457-65 (9" Cir. 1993); *United States v. Osorio*, 929 F.2d 753, 760-61 (1St Cir. 1991). Mr. Baptiste specifically includes within this request the information requested supra, and further includes:

(a) The name of each cooperating witness.

(b) The case names and numbers of the prosecutions in which the cooperating witness has previously been utilized as a cooperating witness.

(c) The case names and numbers of any trials or evidentiary hearings at which the cooperating witness has testified concerning his own prior criminal activity, payments or rewards provided to him by the government, efforts made to induce others to participate in criminal activity, or other purported law enforcement-related matters.

(d) Any ledger, sheet, or other document which details the sums paid the cooperating witness or his family in this and other cases in which the informant assisted the government, and the purpose of each such payment.

(e) Any report, document, or information which details the criminal activities of the cooperating witness which were undertaken by him without the authority or approval of the government, but for which the government has elected, formally or informally, not to prosecute.

(f) FBI rap sheet, NCIC print-out, and other records available to the government reflecting the arrest, conviction, and investigative history of the cooperating witness.

(g) Information concerning prior misconduct by the cooperating witness in the performance of his role as an informant including, but not limited to, any prior refusal of the informant to testify for or assist the government, and any prior allegation that the informant entrapped another person to commit an offense or made false statements in connection with a criminal investigation.

(h) Any information concerning alleged misconduct by the cooperating witness other than in his role as a cooperating witness, including misconduct that reflects a lack of candor, truthfulness or law-abiding character of the informant, such as uncharged criminal conduct or fraud.

(I) Any record or information maintained by law enforcement agencies relating to cooperating witnesses utilized in this case, including records concerning:

>    (1) Use of a code name;
>    (2) Use of an assumed/false identity;
>    (3) Reasons for cooperation;
>    (4) Whether given a polygraph exam. If so, the results of such an exam and any information that the witness refused or failed to submit to such an exam;
>    (5) Contracts executed with any law enforcement agency;
>    (6) Any release forms executed by the witness;
>    (7) Requirement that he protect his false identity;
>    (8) Consent to recording any conversation with any party; and
>    (9) Contingency fee agreements.

Wherefore, Mr. Baptiste requests that this Court order the disclosure of the above-listed items pertaining to the issues of selective law enforcement and prosecution.

Counsel for the government opposes the relief sought in this motion.

Respectfully submitted,

THE MALONE LAW FIRM, P.A.
701 BRICKELL AVENUE, SUITE 1550
MIAMI, FLORIDA 33131
Telephone: (305)728-5134
Facsimile: (305)728-5288
Email: omar@malonelawfirm.com

By: _____/S/_____
T. OMAR MALONE, ESQ.
Florida Bar No.: 697796

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record this 28th day of August 2019.

By: _____/S/_____
T. OMAR MALONE, ESQ.