UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-20613-CR-MARTINEZ

UNITED STATES,

   Plaintiff,

v.

SAMUEL BAPTISTE,

   Defendant.
_____/

## MOTION TO DISMISS THE INDICTMENT FOR VIOLATING THE DEFENDANT'S FIRST AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION AND INCORPORATED MEMORANDUM OF LAW

### I. Introduction

The defendant, Samuel Baptiste, moves that this Court dismiss those portions of Counts One through Six of the Indictment that are based on speech that is protected by the First Amendment.

### II. Facts

The Indictment (hereafter "indictment") in this case was returned on July 19, 2018. It alleges, *inter alia*, that the defendant distributed information pertaining to explosives in violation of 18 U.S.C. § 842(p)(2)(A) **(Counts One through Four)**; attempted to provide material support or resources to the Islamic State of Iraq and al-Sham ("ISIS"), in violation of 18 U.S.C. § 2339(a)(1) **(Count Five)**; attempted to provide material support to terrorists, in violation of 18 U.S.C. § 2339A(a) **(Count Six)**.

The United States makes it clear through its allegations in the indictment that the government considers the defendant's dissemination of protected speech *itself* is a violation of

1

these statutes. The government views Mr. Baptiste's sharing of information (speech), obtained from open source public information found on the internet, to be a violation of federal criminal law. Mr. Baptiste's sharing of documents written by someone else and readily available on the internet is an act protected by the First Amendment and cannot be the basis for a criminal prosecution.

### III. Discussion

Mr. Baptiste vigorously denies that he has engaged in any acts intended to support terrorism. The United States Supreme Court, and the Courts of Appeals have made clear that the First Amendment of the United States Constitution protects the right to speak and to publish, or republish, speech which advocates or encourages political, religious or even violent acts especially when those acts are to take place at some indefinite time in the future. The instant Indictment treads squarely on Mr. Baptiste's rights under the First Amendment and must be dismissed

"Congress shall make no law [abridging] the freedom of speech" *US Const, Amend I*. Thus, Mr. Baptiste's words and actions alleged in the indictment are enshrined in and protected by his First Amendment right to free speech. This sacrosanct freedom of speech protected by the First Amendment includes the freedom to advocate for the use of force, or even the violation of the law *Brandenberg v. Ohio*, 395 US 444, 447-449 (1969), to advocate for action at some indefinite time in the future, *Hess v. Indiana*, 414 US 105, 108-09 (1973), to advocate the political goals of a terrorist organization, including praising such groups for using terrorism to achieve its objectives, *Humanitarian Law Project v. Reno*, 205 F3d 1130, 1133 (9th Cir. 2000) <u>*affirmed*</u>, *Humanitarian Law Project v. US Dept of Justice*, 352 F 3d 382 (9th Cir. 2003), and to even advocate for action that makes it more likely that someone will be harmed at some unknown time in the future by an unrelated third party, *Planned Parenthood of the Columbia/Willamette Inc. V. American Coalition*

*of Life Activists* (PPCWI), 244 F 3d 1007, 1015 (9th Cir. 2001), <u>vacated on other grounds</u>, 290 F3d 1058 (9th Cir. 2002)(en banc), *cert denied*, 123 S. Ct. 2637 (2003)(PPCWII). The speech alleged by the government in the Indictment is protected under the First Amendment and compel dismissal of Counts One through Six.

Speech that can be prohibited includes that which is "directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969). It includes speech that furthers a conspiracy to commit a crime. *Rice v. Paladin Enterprises, Inc.*, 128 F.3d 233, 243-44 (4th Cir. 1997); *U.S. v. Mubayyid*, 476 F.Supp.2d 46, 55 (D. Mass. 2007). It includes speech that is a threat to injure someone or destroy property. *Watts v. United States*, 394 U.S. 705 (1969); *Planned Parenthood v. Am. Coalition of Life Activists*, 290 F.3d 1058 (9th Cir. 2002). Although there are categories in which speech can be restricted, the First Amendment remains a bulwark against prohibiting speech that is unpopular, particularly on government policies. *Snyder v. Phelps*, 131 S.Ct. 1207, 1215 (2011) ("The First Amendment reflects 'a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide open.") (quoting *New York Times Co. v. Sullivan,* 376 U.S. 254, 270 (1964)).

In the context of a charge of providing material support to terrorists, the defendant is free to "say anything [he] wish[es] on any topic." *Holder v. Humanitarian Law Project* ("HLP"), 561 U.S. 1, 130 S.Ct. 2705, 2722-23 (2010). The Supreme Court in Holder explicitly stated that independent advocacy, even of a terrorist organization, is protected by the First Amendment. <u>Id.</u> at 2723, 2728.[1]

---

[1] 18 U.S.C. § 2339B also does *not* punish membership in or association with terrorist organizations. <u>Holder v. Humanitarian Law Project</u>, 561 U.S. 1, 130 S.Ct. 2705, 2723, 2730 (2010). Mr. Baptiste

The First Amendment protects Mr. Baptiste from being tried or convicted based on the speech alleged in the indictment. *Holder v. HLP* speaks directly to this tenet. Furthermore, Mr. Baptiste's speech was not incitement under *Brandenburg*; it did not further the substantive terroristic aims that the government alleges, and it did not constitute any threat.

**A. Mr. Baptiste's Speech is "core" Speech for First Amendment Purposes**

The government has alleged and will attempt to proffer evidence at trial that Mr. Baptiste (1) watched subjectively distasteful videos he obtained online and shared them with others; (2) shared subjectively distasteful literature he obtained online and shared it with others; (3) discussed and debated religious and geo-political dissatisfaction with others online; (4) accessed all sorts of subjectively distasteful information online; and (5) discussed how to protect oneself and suggested the types of tools and techniques one might need and/or use to accomplish same. Despite the government's allegations to the contrary, Mr. Baptiste clearly did all of these things in order to exchange ideas, generate discussion and bond with those who shared his religion and views.[2]

These acts clearly fall within the First Amendment's conception of speech. *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 321 (2002); Kaplan v. California, 413 U.S. 115, 119-120 (1973) (films are protected by the First Amendment); Carey v. Brown, 447 U.S. 455, 462 n.6 (1980) (*quoting Consolidated Edison Co. of N.Y. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 530, 537 (1980)) (discussions are protected); *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972) (receiving information is protected); *Board of Educ., Island Trees Union Free School Dist. No. 26 v. Pico,* 457 U.S. 853, 867 (1982) (transferring ideas is protected); *McIntyre v. Ohio Elections*

---

was *never* a member or associated with ISIS or any other terrorist organization, and the government does *not* allege that he was a member or associate.

[2] For purposes of this motion attacking the indictment as alleged, the defense is not challenging the factual basis of the government's allegations. However, beyond the scope of the instant motion, the defense does not concede the veracity of any of the facts alleged in the indictment.

*Comm'n*, 514 U.S. 334, 342 (1995) (anonymity in publication is protected); see *Griswold v. Connecticut*, 381 U.S. 479, 482 (1965) (the State may not, consistent with the First Amendment, prohibit the study of a foreign language nor the right to print or distribute).

Indeed, the speech at issue in this case is political speech that lies at the heart of speech protected by the First Amendment. *Hill v. Colorado*, 530 U.S. 703, 787 (2000) (Kennedy, J., dissenting) ("Laws punishing speech which protests the lawfulness or morality of the government's own policy are the essence of the tyrannical power the First Amendment guards against"); *Elrod v. Burns*, 427 U.S. 347, 356 (1976) ("political belief and association constitute the core of those activities protected by the First Amendment"); *Texas v. Johnson*, 491 U.S. 397, 411 (1989) ("expression of dissatisfaction with the policies of this country, [is] expression situated at the core of our First Amendment values").

The Supreme Court case *Snyder v. Phelps* suggested some of the speech that is regarded as a "matter of public concern" and that therefore lies "at the heart of the First Amendment's protection." 131 S.Ct. 1207, 1215 (2011). In *Snyder*, the Court considered the speech of religious protestors at the funeral of a fallen U.S. soldier. This speech consisted of protestors carrying signs saying: "God Hates the USA/Thank God for 9/11," "Thank God for IEDs," and "Thank God for Dead Soldiers." *Id.* at 1213. The Court found that this speech involved a matter of public concern and was therefore entitled to "special protection" under the First Amendment. *Id.* at 1219. "Such speech cannot be restricted simply because it is upsetting or arouses contempt." *Id.*

If the signs in *Snyder* involved a matter of public concern, then Mr. Baptiste's speech certainly does as well. He had exchanges over the internet with others about controversial topics and tactics involving global politics and religion, and he exchanged materials and videos of events surrounding the wars/conflicts/occupation in the Middle East. He put forward the religious beliefs he held as well as his political views on the Middle East. That these exchanges or the beliefs

expressed were offensive or disagreeable does not matter. *Id.* ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable.") (quoting *Texas v. Johnson,* 491 U.S. 397, 414 (1989)).

In wartime, in fact, courts must be especially careful to preserve free speech. The Supreme Court wrote that:

> [t]he greater the importance of safeguarding the community from incitements to the overthrow of our institutions by force and violence, the more imperative is the need to preserve inviolate the constitutional rights of free speech, free press and free assembly in order to maintain the opportunity for free political discussion, to the end that government may be responsive to the will of the people and that changes, if desired, may be obtained by peaceful means.

*De Jonge v. Oregon*, 299 U.S. 353, 365 (1937).

**B.** *Holder v. Humanitarian Law Project*

The Supreme Court's opinion in *Holder v. Humanitarian Law Project*, 561 U.S. 1, 130 S.Ct. 2705, 2713 (2010) further illustrates why the First Amendment protects Mr. Baptiste's speech.

Humanitarian Law Project is a United States-based, United Nations-recognized human rights organization. It wanted to train two terrorist organizations to use humanitarian principles and international law to peacefully resolve their disputes, engage in political advocacy on the groups' behalf, and teach organization members how to petition bodies like the United Nations for relief. *Id.* at 2716. It petitioned the Supreme Court for a declaration that this activity does not constitute material support for terrorists, pursuant to 18 U.S.C. § 2339B. *Id.* at 2731-32.

The Court held that the First Amendment left unprotected only the "narrow category of speech to, under the direction of, or in coordination with foreign groups that the speaker knows

to be terrorist organizations." *Id.* at 2723. "Congress has avoided any restriction on independent advocacy, or indeed any activities not directed to, coordinated with, or controlled by foreign terrorist groups." Id. at 2728.

This narrow prohibition leaves most speech protected. "Under the material-support statute, [the defendant] may say anything [he] wish[es] on any topic." *Id.* at 2722-23. The government acknowledged that § 2339B "does not prohibit independent advocacy or expression of any kind." *Id.* at 2723. To be guilty of providing material support to terrorists, one must work under the organization's "direction and control." *Id.* at 2721. In other words, there must be a solid "connection between the service and the foreign group." *Id.* at 2722. Because Humanitarian Law Project proposed to work in connection with terrorist organizations, the Court found that their proposed efforts would constitute material support. Given its narrow prohibition, however, the Court noted that it was not addressing "the resolution of more difficult cases that may arise under the statute in the future." *Id.* at 2712.

The case at bar is one of those future cases, but it is not a difficult one. Mr. Baptiste engaged in protected and, at most, independent advocacy autonomously of any organization's "direction and control." He did not do so under the direction or control or in coordination with ISIS or any other designated terrorist organization. The indictment's relative silence on this issue reflects the fact that Mr. Baptiste never had any such connection.

Furthermore, even if the government were able to establish a tenuous connection[3] between Mr. Baptiste, ISIS or a legitimate member of ISIS, the government has not produced and cannot not produce any evidence establishing Mr. Baptiste's awareness of such membership.

---

[3] Courts have uniformly discounted the strength of unsubstantiated degrees-of-separation arguments. *Mazzeo v. Gibbons*, 2010 WL 3910072, *6 (D. Nev.); *Fharmacy Records v. Nassar*,

There is no evidence that the defendant's speech was under the direction or control or in coordination with any terrorist organization. Mr. Baptiste did nothing he believed ISIS "could use" or that advanced their objective. Under the direction or control or in coordination with means active mutual participation between a defendant and a terrorist organization. The plaintiffs in *HLP* would have been guilty of material support because they intended to work directly with terrorist organizations, regardless of the peaceful nature of the work that they proposed.[4]

Under the First Amendment and *HLP*, the defendant was free to say anything he wished on any topic. He did so, and the government has indicted him based on this speech. This indictment violates the defendant's First Amendment rights and must be dismissed.

## C. Mr. Baptiste's Speech is Not Incitement

Speech may be prohibited if it constitutes "advocacy of the use of force or law violation" and if that advocacy "is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969). "[T]he mere abstract teaching of the moral propriety or even moral necessity for a resort to force and violence" may not be prohibited. Id. at 448.

Consistent with *Brandenburg*, Mr. Baptiste's speech is clearly protected. His speech is not even tantamount to advocacy, much less advocacy that was intended and likely to lead to imminent lawless action. Rather, Mr. Baptiste's speech consists of writings and videos describing or depicting insurgent fighters in the middle east and depicting military operations against enemies, combatants and others. It consists of conversations and debates the defendant had with others about

---

572 F.Supp.2d 869, 876 (E.D. Mich. 2008); *WE Media, Inc. v. General Elec. Corp.,* 218 F.Supp.2d 463, 475 (S.D.N.Y. 2002).

[4] The Court in *Holder* specifically noted that it could not determine the degree or coordination or direction needed to violate the material support law because it did not have specific activities before it.

controversial topics. The very purpose of speech is to persuade. *Hill v. Colorado*, 530 U.S. 703, 716 (2000) ("The right to free speech, of course, includes the right to attempt to persuade others to change their views"); *Lee v. Weisman*, 505 U.S. 577, 591 (1992) ("[T]he very object of some of our most important speech is to persuade. . . ."); *Eisenstadt v. Baird*, 405 U.S. 438, 459 (1972) ("The First Amendment protects the opportunity to persuade to action. . . ."); *Thomas v. Collins*, 323 U.S. 516, 537 (1945) ("'Free trade in ideas' means free trade in the opportunity to persuade to action, not merely to describe facts.").

The question is whether Mr. Baptiste intended to advocate the use of force or violation of law. He did not, and the indictment does not indicate that he did. The evidence does not indicate that Mr. Baptiste intended that his speech lead to *imminent* lawless action or was likely to do so. Mr. Baptiste watched and shared videos, written materials, and communicated with people about controversial topics inherent in the wars/conflicts in the Middles East. This is not the kind of speech that would lead listeners to immediately engage in violence or lawless action. The indictment attests to the fact that Mr. Baptiste's speech led to absolutely nothing. Of all the speech Mr. Baptiste is alleged to have engaged, the government is unable to point to only a single effect.

### D. Mr. Baptiste's Speech is Not a Threat

The First Amendment permits the government to ban "true threats." *Virginia v. Black*, 538 U.S. 343, 359 (2003). Such threats "encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." Id.

Political hyperbole is not a true threat and cannot be banned under the Court's true threat doctrine. *Watts v. U.S.*, 394 U.S. 705, 708 (1969). For example, an opponent of the draft who receives orders to report for military service may say, "I am not going. If they ever make me carry a rifle the first man I want to get in my sights is" the president. Id. at 706. Similarly, merely

emotional speech that may appear to be threatening is protected. During a boycott, for example, a boycott leader's statement, "If we catch any of you going in any of them racist stores, we're gonna break your damn neck," is protected. *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 902 (1982).

In *Claiborne Hardware*, the Supreme Court found that the speech was protected, writing, "Speech does not lose its protected character . . . simply because it may embarrass others or coerce them into action." Id. at 910. The First Amendment's "'[f]ree trade in ideas' means free trade in the opportunity to persuade to action, not merely to describe facts." *Id.*

In the instant case, the defendant's speech did not constitute a threat. His speech contained no threat of violence. The defendant communicated his speech to friends or correspondents, not as an actual threat to a potential victim. *See Demers ex rel. Demers v. Leominster School Dept.*, 263 F.Supp.2d 195, 201 (D. Mass. 2003) (no First Amendment protection if the speaker "should have foreseen that her words would be seen as a threat to the" potential victim) (citing *Lovell By and Through Lovell v. Poway Unified School Dist.*, 90 F.3d 367, 373 (9th Cir. 1996)). To find that the defendant's speech constituted a threat would be tantamount to someone "threatening" his cousin by expressing his anger to the cousin only to his own wife in the privacy of the marital home.

The defendant's speech was, at worst, political dialogue and hyperbole concerning the United States' actions in other countries. His speech concerned issues of no less public importance than those in *Watts* and *Claiborne Hardware*, and his speech was in fact not threatening at all.

## IV. Conclusion

Mr. Baptiste is being accused of distributing publicly available literature concerning explosives and attempting to provide material support to terrorists and terrorist organizations. These charges are based primarily on his speech, which is protected by the First Amendment. For

10

the above reasons, Mr. Baptiste moves this Court dismiss Counts One through Six of the indictment.

Counsel for the government opposes the relief sought in this motion.

>Respectfully submitted,
>
>THE MALONE LAW FIRM, P.A.
>701 BRICKELL AVENUE, SUITE 1550
>MIAMI, FLORIDA 33131
>Telephone: (305)728-5134
>Facsimile: (305)728-5288
>Email: omar@malonelawfirm.com
>
>By: _____/S/_____
>T. OMAR MALONE, ESQ.
>Florida Bar No.: 697796

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record this 28th day of August 2019.

>By: _____/S/_____
>T. OMAR MALONE, ESQ.