(1)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.18-20613-CR-MARTINEZ/OTAZO-REYES

UNITED STATES OF AMERICA,
        Plaintiff,
VS.

ABDUL-JALIL RASHID AL-IMARAH
(S.BAPTISTE),
        Defendant,
_____/


FILED BY _____ D.C.
SEP 16 2019
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

MOTION TO MODIFY/EXEMPT/WAIVE CMU CONDITIONS IMPOSED UPON DEFENDANT IN THE INTEREST OF UPHOLDING AND PROTECTING ALL 6TH AMENDMENT CONSIDERATIONS

### I. Introduction

The unjustly, innocent(before Allah), detained captive Muwahid(monotheists) who is being held as a political prisoner of war by the crusade known as the 'War on Terror', being a casualty of such, moves this court to modify, exempt, or wai-ve the CMU restrictions imposed upon him which hinders proper ability to communicate with legal counsel; prospective, appointed, retained, or otherwise.

### II. Facts

In a previous case related to this instance case, the defendant was sentenced to 80 months in custody followed by three years of supervised release. Not long after the sentence was imposed(June 21, 2017), he was designated to a Communicat-ions Management Unit(Herein after referred to as CMU) of the Bureau of Prisons (herein after referred to as BOP).

While at the CMU defendant was charged with a 6 count indictme-nt on July 19th, 2018. The offenses are alleged to have taken place on Nov. 6, 2016. The defendant is also facing 115 years maximum with a possible enhancemen-t of life if convicted(See Feb. 6th, 2019 Faretta hearing, proffer by Assista-nt United States Attorney Marc Anton). Defendant prior to July 19th, 2018 has never been charged with any terrorism offense, a claim argued by AUSA Anton (See opposition to transfer motion by prosecutor), yet deliberately sent to a prison with convicted terroists and following his only known association to 'terrorists' has been charged. Aside from the pressing question of what makes him a terrorist now while not considered one prior to such, if we are to believ the assertions made by the government, we must ask if and to what extent CMU

(2)

conditons are warranted against the defendant during the the pre-trial phase of the criminal proceedings.

"CMU designation is not based on any formal designation as a 'terrorist'," these facilities are "known as 'terrorist units'" **Aref v Lynch**,833 F.3d at 267(D.C. Cir. 2016). On the other hand it is said that "CMU designation is non-punitive" (BOP program statement 5214.02,Communication Management Unit). Absent any showi -ng of a cause that would warrant such severe imposition on Baptiste's ability to communicate with counsel, law professors, and legal advocacy groups or a nee -d for such restrictions too be placed during the pre-trial period Baptiste has had his rights curtailed in regards to attempting to reach out and secure couns -l of his own choosing and obtaining assistance in terms of research for his case all for no reason along with utter disregard for his rights.

Previously on Jan.2nd Baptiste(Abdul-Jalil) has in addition to express ing lack of confidence in counsel, has addressed the court about the obstacles put in place by the CMU sanctions(See Jan.2n Status hearing transcript). He has complained to the court his lack of adequate means to communicate with counsel recently this year in July and raised concerns with the interference and interc -eption of his legal mail by Counter Terrorism Unit(herein after CTU) officals stemming from the CMU sanctions.
Initially upon arriving at FDC Miami Baptiste did not have CMU restrictions for a period of approximately two weeks. During this time frame Baptiste had regul -ar communications with family and loved ones additional to attempting to have them look up pro-bono attorneys, and avising them how tow crowd fund for a way to raise funds for the retainment of counsel. After this brief reprieve he was once more under sanctions. For a period of time he discussed and raised his con -cerns to staff about the possibility of the CMU conditions impeding his abilit -y to prepare a defense and obtain counsel. Baptiste to no avail tried going through the Administrative remedy process. Yet noone's CMU designation 'has ev- er been reversed through the administrative appeals process." as reported by
Hum

(3)

Human Rights Watch who has covered and investigated CMU conditions and other repressive tacticts used in so-called 'terrorism' prosecutions.

### III. Discussion

BOP's Programs Statement 5214.02 states:

> 540.200 Purpose and Scope.
>
> (a) <u>Purpose of this subpart</u> This subpart defines the Federal Bureau of Prisons'(Bureau) authority to oper-ate, and designate inmates to, Communications Management Housing Units(CMUs) within Bureau facilities.
>
> (b) A <u>CMU</u> is a general population unit where inmates ordinarily reside, eat, and participate in all educational, recreational, religous, visiting, unit management, and work programming, within the confines of the CMU. Additionally, CMUs may contain a range o-f cells dedicated to segregated housing of inmates in administrative detention or disciplinary segregation status.
>
> (c)<u>Purpose of CMUs</u>.The purpose of CMUs is to provide an inmate housing unit enviroment that enables staff to more effectively monitor communication between in-mates in CMUs and persons in the community. The ability to monitor such communication is necessary to ensure the safety, security, and orderly operation o-f correctional facilities, and protection of the public. The volume, frquency, and methods, of CMU inmate contact with persons in the community may be li-mited as necessary to achieve the goal of total monitoring, consistent with this subpart.

An argument to be made is that CMU sanctions as mentioned within purpose and sc-ope section of the BOP program statement, is supposed to be implemented within the CMUs alone. Since logically CMU is a place that has inherent conditions so to recreate conditions outside of that 'inmate housing unit enviroment' would be contrary to the stated purpose. Though it mentions that "[T]his Program Statement applies to all inmates" including pretrial detainess such implementation is unprecedented and BOP nor DOJ could point to one other case where CMU condit-ions have been applied to an inmate outside of the CMU other than the step dow-n phase which is a transfer of an inmate of a post-conviction status.

The fact that prisoners at the step down phase are allowed and afforded the same communication privileges as other prisoners, except continued CTU monit

(4)

-oring, shows that a less restrictive alternative exists for the BOP to monitor Baptiste's communication in a way that would not interfere or hamper his abilit-y to exercise his 6th amendment rights and prepare his defense.

Again the goal of CMUs as stated in the DC Court in Aref v. Ly-nch, was 'to address a 'deficiency' within the BOP "in the monitoring of inmate communications that allowed several inmates with terrorism related convicti-ctions to communicate with extremist groups outside the prisons." **Aref, at 247** The government nor BOP, to date that Baptiste has attempted to communicate with members of any extremist groups or that communication with him has ever been so-ught, in fact no such connection has ever been proved nor alleged. It is absur-d to draw the conclusion that a defendant who is seeking to be allowed meaninf-ul access to counsel and legal experts for the express purpose of combating th charges which he is charged of needs to be prevented from such efforts simply because of some perceived 'deficiency'.

As already mentioned BOP nor the United States have sh-own or alluded to any 'terrorist' connections that Baptiste may have. As alrea-dy stated to the court in counsel's 'Motion to Dismiss Indictment For Pre-Indictment delay', the reason for Baptiste's designation to the CMU was an unjust prosecutorial tactic to surveil him and pave the way for these instant charges. Baptiste is **Not** convicted of any terrorism offense and did not even have charge-s of terrorism prior to his designation to the CMU.
As written in the Bureau's Program Statement criteria for CMU designation, " Inmates may be designated to a CMU if evidence of the following criteria exists

> :(a) The inmate's current offense(s) of conviction, or offense co-nduct, included association, communication, or involvement, rel-ated to international or domestic terrorism;
>
> (b) The inmate's current offense(s) of conviction, offense condu-ct, or activity while incarcerated, indicates a substantial li-kelihood that the inmate will encourage, coordinate, facilitate, or otherwise act in furtherance of illegal activity through comm-unication with persons in the community;

(5)

>> (c) The inmate has attempted, or indicates a substantial lik-elihood that the inmate will contact victims of the inmate's current offense(s) of conviction;
>
> (d) The inmate committed prohibited activity related to mis-use or abuse of approved communication methods while incarcerated; or
>
> (e) There is any other substantial/credible evidence of a potential threat to the safe, secure, and orderly operation prison facilities, or protection of the public, as a result of the inmate's communication with persons in the commm-unity."

Sections a,b, nor c applies to Baptiste. And if e or d applied that still would not serve as a legitimate reason to place obstacles of him exerting his right to counsel. Thus the right to seek legal representation extends not only to the right to communicate with individual members of the bar, but also to the right to seek advice and possible representation from legal organizations, such as ACLU, CAIR, and others. (Burns v. Swenson 420 F.2d 471(8th Cir. 1970) and 440 U.S 1062(1970).

In addition to that in the section governing legal activities permitted at a CMU it states:

> "Inmates may perform legal activities per 28 CFR part 543, and the Program Statement **Legal Activities, Inmate**. The use of assistants by attorneys to perform legal tasks, as provided in the Program Statement **Legal Activities**, applies to inmates in the CMU."

In the mention Program Statement concerning inmates' legal activities, a noteworthy section reads:

> 11. [Retention of Attorneys 543.12]
>
> a. The Warden shall allow an inmate to contact and retain attorneys. With the written consent of the inmate, staff may advise an attorney of the inmate's available funds. Staff may not interfere with selection and retention of attorneys if the inmate has attained majority and is mentally competent....."

Aside from the obstacles the CMU conditions place on Baptiste they also contravene other parts of Bureau regulations.

A possible argument may be raised that the court does not have jurisdiction or authority over the BOP in regards to such issues dealing with its internal oper

(6)

-ations and perhaps this will cause the court to abstain from addressing these issues. But such would be a misguided notion or assumption since it is the duty of the court,which oversees the integrit of the adverserial process, to ensure that the rights of the accused are not trampled down upon or disregarded. In th-e same vein that that the court has the authority to dismiss or appoint counse-l as well as fine and penalize those affecting the proceedings so to does its authority extends over the issue brought before it now.

  Previously in October 20th, 2006 a similar case was brought before Judge Cooke in Adham v. Federal Bureau of prisons(Case no. 06-21633-CIV-COOKE/BR-OWN).  In that case the plaintiff was kept in SHU at FDC-MIAMI due to an Adminstrative Detention Order determining that he posed a threat to the 'security' of the institution. The petitioner complained of being deprived of certain privileg-es denied to him by him not being allowed in general population along with BOP staff handling or rather mishandling of his legal mail, attorney work product do-cuments and the like. The Court in Adham Amin Hassoun v. Federal Bureau of Prisons ended up denying the motion while noting that "[t]he BOP shall remain mindf-ul that Petitioner's right to counsel can also be eroded when gaining access to Petitioner becomes so burdensome that it negatively affects his adequate repres-entation."
There is also a quite stark difference between the defendant(Baptiste) in this case and the  aforementioned petitioner. In Adham or Hassoun, the petitioner was charged with multiple terrorism offenses, had extensive media coverage, possesse-d many co-defendants(included one tortured while in the hands of the US milita-ry and detained at Guantanamo Bay), and was segregated from the general inmate population due to alleged 'terrorist ties' and membership in Al-Qaeda. On the co-ntrary this defendant has had little media coverage of his case, has no known co-defendants or co-conspirators, and is in  general population.

  The Due Process Clause dictates that a detainee  may not be punished prior to an adjudication of guilt in accordance with due process of law. (Bell v Wolfish 441 U.S 520, 535, 99 S. Ct. 1861 60 L. Ed. 2d 447(1979).

(7)

The government's sending him(the defendant) to CMU as some post conviction/pre-trial surveillance tactic beforebringing this instant indictment is illegal and continuing to employ these restrictions on him in an manner which interferes wit-h his ability to prepare an effective defense is unconstitutional.
These are not simply a challenge to the illegality of the restrictions but on th-e fact that these restrictions hinder the defendant from effectively being able to litigate his case in a manner inconsistent with the 6th Amendment. A matter that should not be losed focus of is what the Supreme Court stated in Turner v. Saffley, that "prison walls do not form a barrier separating prison inmates from the protections of the Constitution". S.Ct. 2254 26 L. Ed 2d 64 (1987).

Of course the false arguments will be attempted to be raised by the govern-ment that deprivations of constitutional protections may be warranted to furthe-r penological interests and that deference to prison authorities in such inter-al matters are usually upheld by courts. Yet it strikes me as amazing that these same authorities who seek to grant U.S courts authority and jurisdiction over alleged crime transcending national boundaries of the US which occur in foreign sovereign nations are in their ideological bent towards totalitarianism seek to at the same time deny courts authority and jurisdictions domestically and suspen-d the constitution in matters where it is most concerned.
There is no legtimate penological interest which exist that would warrant such repressive conditions that Baptiste is facing, not to mention the other human rights of his which are constantl violated by BOP officials and staff.It seems that simply because Baptiste practices a religion villified and demonized by cou-rts and the media within the United States, exercise his first amendment rights in advocating for the application of Islamic law(shari'ah) and preach the duty of self-defense couple with Islamist rhetoric is the sole reason for this indict-ment and CMU conditions. If such is correctly the reason then it is not one tha-t is legitimate. In fact the reason for Baptiste's CMU conditions as stated in the fo...

(8)

the form explaining the reason for transfer to CMU is simply becuase Baptiste allegedly stated in an interview with the FBI that Abu Bakr Al-Baghdadi(Hafizahullah) was the Khalifah and would continue being such until he dies or is killed. Due to a person making such a statement or any other which would be protected by the First Amendment, such should not be a reason for denying him the right to a fair trial or the ability to present an adequate defense.

Perhaps the Court will note that not one authoriy has been cited for a indication pointing to why such motion should be entertained. The reason beyonnd the countless cases sighted is because no court before has ever had to deal with a similar incident. This in itself is totally unprecedented. Yet the constitution itself and the principles of fair-play stand alone as sufficient authoriy since no legitimate reason exist as to why these repressive tactics should continue to be employed against Baptiste. Even Representative Sheila Jackson has said that CMU conditions "has the possibility to rise to cruel punishment, and **serves no legitimate purpose**"(2010 letter to BOP regarding CMU prisoners, emphasis added).

## IV. Conclusion

The CMU conditions currently imposed on Baptiste violates his 6th Amendment rights. This violation continues to be a substantial and significant burden and obstacle in the way of Baptiste's ability to mount an effective defense. Accordingly this Muwahid(Monotheist) moves this court waive(dismiss) these conditions or modify them in a least stringent and repressive maner that will enable him to have meaningful and access to counsel as well as correspond with lawyers and law professors who can assist him with his defense. a hearing on this motion is requested.

Respectfully Submitted,
Abdul-Jalil Rashid Al-Imarah
(S.Baptiste)

Dated: september 8th, 2019

Samuel Baptiste #09681-104
FDC Miami
PO Box 019120
Miami, FL 33101

[ Legal Mail ]

Judge Jose
400 North Miami

