UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-20613-CR-MARTINEZ

UNITED STATES OF AMERICA

v.

SAMUEL BAPTISTE,

Defendant.

_____/

## GOVERNMENT'S RESPONSE IN OPPOSITION TO THE DEFENDANT'S MOTIONS TO DISMISS UNDER THE FIRST AND FIFTH AMENDMENTS

COMES NOW, the United States of America, by and through its undersigned counsel, and hereby files its Response in Opposition to the Defendant's Motions to Dismiss (ECF Nos. 80, 81).

## BACKGROUND

Samuel Baptiste is a United States citizen of Haitian descent. Baptiste has a lengthy criminal history and was, prior to the instant Indictment, serving an 80-month sentence after pleading guilty in the District Court for the Southern District of Florida to being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). *See* Judgment, *United States v. Baptiste*, No. 16-CR-20907-COOKE, ECF No. 58 (S.D.F.L. Jun. 21, 2017). This plea stemmed from Baptiste's possession of two 9mm Sig Sauer handguns, two Rock River Arms LAR-15 semi-automatic assault rifles, one 9mm Beretta M9 handgun, one Smith and Weston M&P Sport, two boxes of .223 caliber ammunition, and two boxes of 9mm ammunition. *See* Factual Proffer, *United States v. Baptiste*, No. 16-CR-20907-COOKE, ECF No. 45 (S.D.F.L.

1

Mar. 31, 2017). According to the Factual Proffer filed in conjunction with Baptiste's plea, Baptiste possessed the two Rock River Arms LAR-15 semi-automatic assault rifles on November 5, 2016, and was aware that these weapons would be transported out of the United States and into Haiti at his co-defendant's request. *Id*. Baptiste possessed the remaining firearms and ammunition on October 23, 2016. Although Baptiste was also charged with one count of attempted export of firearms from the United States, in violation of 18 U.S.C. § 554(a), the Government dismissed this count pursuant to the plea agreement. *See* Plea Agreement, *United States v. Baptiste*, No. 16-CR-20907-COOKE, ECF No. 44 (S.D.F.L. Mar. 31, 2017). Baptiste was sentenced on June 21, 2017.

Prior to his incarceration, both before and during the time period discussed above, Baptiste was a prolific supporter of the Islamic State of Iraq and al-Sham ("ISIS"), managing multiple social media accounts directed at fostering jihadist sentiment and support for ISIS. For example, Baptiste managed a Tumblr account called "@Khalifihaiti," which was subtitled "Insha'Allah I'll be the Rifle of Allah," and a Telegram channel named "Dhikrul-Jihad wal-qasas" which was devoted to news and propaganda related to ISIS. As relevant to the pending charges, Baptiste's central Telegram channel was "Jihadi gear (Private)," a group chatroom run by Baptiste and membered by likeminded individuals. The "Jihadi gear (Private)" chatroom was created and moderated by Baptiste, impart, to foster jihadist sentiment, encourage violent attacks, and promote support for ISIS.

While Baptiste's Telegram channels were devoted to jihadist themes in general, as well as religion and politics, "Jihadi gear (Private)" had a demonstrably specific emphasis on ISIS. A sampling of Baptiste's "Jihadi gear (Private)" posts include:

- Numerous pictures of ISIS iconography, including ISIS flags;
- Excerpts of ISIS speeches extolling jihad and encouraging hijrah (traveling to ISIS-controlled territory);

- Excerpts of an ISIS speech encouraging attacks in the West;
- Multiple links concerning ISIS' proficiency in making Improvised Explosive Devices and other do-it-yourself-type weapons;
- Encouraging comments regarding pledging allegiance to ISIS, including calling Abu Bakr al-Baghdadi "Amir al- Mu'minin," an honorific meaning commander of the faithful;
- A link to a PDF of *The Religious and Moral Doctrine of Jihad*, a book written by Ibn Taymiyyah, the thirteenth/fourteenth century Syrian religious authority whose works have formed the bedrock of modern jihadist thought over the last several decades, including that of ISIS;
- An excerpt of the now-deceased al-Qaeda leader Anwar al-Awlaki's "44 Ways to Support Jihad."

As alleged in the instant Indictment, on November 6, 2016, Baptiste made four distinct posts to "Jihadi gear (Private)," each containing instructions on how to create an explosive device. Respectively, each post contained a link to a document titled (1) "Instructions: How to Make a Homemade Pipe Bomb;" (2) "Pipe Bombs;" (3) "Improvised Explosive Devices;" and (4) "Improvised Munitions Black Book, Volume 1." Baptiste posted the explosive instructions with the prefatory: "from your brothers at Cyber Khalifa."

On July 19, 2018, Baptiste was charged in a six-count Indictment with four counts of violating 18 U.S.C. §842(p)(2)(A) (Distributing Information Pertaining to Explosives); one count of violating 18 U.S.C. §2339B(a)(1) (Providing Material Support and Resources to a Foreign Terrorist Organization); and one count of violating 18 U.S.C. §2339A(a) (Providing Material Support and Resources to Terrorists). As set forth in the Indictment, these charges generally stem from the four explosives-related posts made by Baptiste to his "Jihadi gear (Private)" account.

## ARGUMENT

Baptiste argues that Counts One through Four should be dismissed as unconstitutionally vague and overbroad under the First and Fifth Amendments, both as applied to the facts of his case and facially to any person charged with these crimes. (*See* ECF No. 81 (hereafter "Def. Br.")). Baptiste's arguments should be denied for several reasons. First, the statutes at issue are

3

not unconstitutionally vague as applied to the facts of this case because a person of ordinary intelligence would understand that it was a crime to teach people how to make explosives for the purposes of perpetrating violent attacks. Second, the statutes are not facially void for vagueness because Baptiste cannot meet the high burden of proving that "all applications" of the statutes are vague. Third, the statutes are not overbroad because they do not implicate protected speech in any fashion and, even if they did, Baptiste cannot show that either statute substantially infringes on First Amendment rights.

## I.     Section 2332a Is Not Vague or Overbroad

As an initial matter, Baptiste conflates the legal principles relevant to his motion. Vagueness and overbreadth are separate legal issues based on separate constitutional provisions. "As the Supreme Court recently observed, vagueness and overbreadth are distinct concerns, the first implicating the Due Process Clause and the latter the First Amendment." *United States v. Farhane*, 634 F.3d 127, 136 (2nd Cir. 2011) (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18 (2010) (hereafter "*HLP*")). A vagueness challenge under the Due Process Clause considers whether the defendant had fair notice that his conduct was unlawful. Vagueness is routinely analyzed only as an "as applied" challenge based on the facts of the particular case; facial vagueness is sustained only where "all applications" of the statute would be unconstitutionally vague. *See HLP*, 561 U.S. at 20. By contrast, an overbreadth challenge under the First Amendment is exclusively a facial challenge to the statute, and is based on whether the statute punishes a substantial amount of protected speech. *Farhane*, 634 F.3d at 136.

 Baptiste cannot satisfy either test.

### A.  Statutory Language

Title 18, United States Code, Section 2332a(a)(2) provides:

(a) Offense against a national of the United States or within the United States -- A person who, without lawful authority, uses, threatens, or attempts or conspires to use, a weapon of mass destruction –…

> (2) against any person or property within the United States, and
>
>> (A) the mail or any facility of interstate or foreign commerce is used in furtherance of the offense
>>
>> …
>
> shall be imprisoned for any term of years or for life, and if death results, shall be punished by death or imprisoned for any term of years or for life.

As relevant here, Section 2332a(c) provides as follows:

> (2) the term "weapon of mass destruction" means--
>> (A) any destructive device as defined in section 921 of this title;
>> (B) any weapon that is designed or intended to cause death or serious bodily injury through the release, dissemination, or impact of toxic or poisonous chemicals, or their precursors;
>> (C) any weapon involving a biological agent, toxin, or vector (as those terms are defined in section 178 of this title); or
>> (D) any weapon that is designed to release radiation or radioactivity at a level dangerous to human life . . .

Under 18 U.S.C. § 921(a)(4), the term "destructive device" means:

> (A) any explosive, incendiary, or poison gas—
>> (i) bomb,
>> (ii) grenade,
>> (iii) rocket having a propellant charge of more than four ounces,
>> (iv) missile having an explosive or incendiary charge of more than one-quarter ounce,
>> (v) mine, or
>> (vi) device similar to any of the devices described in the preceding clauses;
>
> (B) any type of weapon (other than a shotgun or a shotgun shell which the Attorney General finds is generally recognized as particularly suitable for sporting purposes) by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, and which has any barrel with a bore of more than one-half inch in diameter; and
>
> (C) any combination of parts either designed or intended for use in converting any device into any destructive device described in subparagraph (A) or (B) and from which a destructive device may be readily assembled.
>
> The term "destructive device" shall not include any device which is neither designed nor redesigned for use as a weapon; any device, although originally designed for use as a weapon, which is redesigned for use as a signaling, pyrotechnic, line throwing, safety, or similar device; surplus ordnance sold, loaned, or given by the Secretary of the Army pursuant to the provisions of section 4684(2), 4685, or 4686 of title 10; or any other device which the Attorney

General finds is not likely to be used as a weapon, is an antique, or is a rifle which the owner intends to use solely for sporting, recreational or cultural purposes.

### B. Section 2332a is Not Void for Vagueness

A statute is unconstitutionally vague under the Due Process Clause of the Fifth Amendment when it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *HLP*, 561 at 18; *see also United States v. Duran*, 596 F.3d 1283, 1290 (11th Cir. 2010) (criminal statute is void for vagueness where "one could not reasonably understand that his contemplated conduct is proscribed"). The vagueness inquiry does not require "meticulous specificity" in the identification of proscribed conduct, *DA Mortg., Inc. v. City of Miami Beach*, 486 F.3d 1254, 1271 (11th Cir. 2007) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972)), but instead requires only that the statutory language "define the criminal offense [] with sufficient definiteness that ordinary people can understand what conduct is prohibited[,]" *United States v. Nelson*, 712 F.3d 498, 504 (11th Cir. 2013).

The Court should first engage in an as-applied analysis when a vagueness challenge is raised because "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982); *United States v. Ibarguen-Mosquera*, 634 F.3d 1370, 1379-80 (11th Cir. 2011) ("Except in First Amendment cases, a party who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.") (citations omitted). It is well-established that facial attacks on a statute for vagueness are disfavored and fail as a matter of law where a defendant's culpability under the statute as applied is readily apparent. *See United States v. Garcia-Cordero*, 610 F.3d 613, 620-21 (11th Cir. 2010) (noting that defendant's "challenge to the statute as unconstitutional as applied to him is nothing more than a disguised facial challenge") (citing

*Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973)); *see also Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450-51 (2008) (explaining that facial challenges are "disfavored" because they "often rest on speculation," run afoul of principles of "judicial restraint" and constitutional avoidance, and threaten to unnecessarily frustrate the will of the political branches).

This preference for as-applied review is "'[e]mbedded in the traditional rules governing constitutional adjudication,'" notably, in "'the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court.'" *Parker v. Levy*, 417 U.S. 733, 759 (1974) (quoting *Broadrick*, 413 U.S. at 610); *Garcia-Cordero*, 610 F.3d at 620-21. That principle, grounded in the separation of powers, serves the jurisprudential maxim that "as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid," a court's "plain duty is to adopt that which will save the Act" enacted by Congress. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 562 (2012) (citation omitted*); see also United States v. Salerno*, 481 U.S. 739, 745 (1987) (observing that defendant mounting facial challenge bears heavy burden because he "must establish that no set of circumstances exists under which the Act would be valid").

### 1. <u>Section 2332a Is Not Vague As Applied to This Case</u>

Section 2332a is not vague as applied to Baptiste's conduct. A person of ordinary intelligence would unquestionably understand that a law prohibiting use of a weapon of mass destruction against another person or property encompasses Baptiste's conduct. Such conduct is "clearly proscribed" by the statute. *See United States v. Crawford*, 714 F. App'x 27 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 1275 (2018) (holding that similar statute, 18 U.S.C. § 2332h, prohibiting the "use, or . . . threat[ened] . . . use of radioactivity-releasing devices" is not void for

vagueness). Baptiste's brief does not grapple with his actual conduct or whether he would be on notice[1] that such conduct—providing explosives information to others intending that such information be used in furtherance of a violation of Section 2332a—was a violation of the statute.[2]

Instead, Baptiste argues in the abstract that the terms "use," "against" and "without lawful authority" render the statute vague because they are undefined. (Def. Br. at 6).[3] However, the fact that these terms are undefined is not fatal to the statute, nor evidence of vagueness. *See United States v. Panfil*, 338 F.3d 1299, 1301-02 (11th Cir. 2003) (18 U.S.C. § 2422(b) not unconstitutionally overbroad or vague despite terms "entice" and "induce" left undefined). Legislators drafting statutes are "[c]ondemned to the use of words" and therefore "we can never expect mathematical certainty from [such] language." *Grayned*, 408 U.S. at 110; *see also Stardust, 3007 LLC v. City of Brookhaven*, 899 F.3d 1164, 1176 (11th Cir. 2018) ("[t]he Constitution does not require perfect clarity in the language of statutes"); *Pine v. City of W. Palm Beach, FL*, 762 F.3d 1262, 1275 (11th Cir. 2014) ("we can never expect mathematical certainty from our language.") (citing *Grayned*, 408 U.S. at 110). Due to the "limitations inherent in English language," "a statute . . . is not required to specify every prohibited act[.]" *Perez v.*

---

[1] To be clear, the Due Process Clause only requires notice in the sense that the statute puts individuals generally on notice of what sort of conduct would constitute a crime. *See HLP*, 561 U.S. at 18 (explaining that a statute needs to provide an ordinary person "fair notice of what is prohibited"). The Government is not required to prove that a defendant was specifically aware of the law that their conduct violated, and there is no requirement of willfulness or specific intent to violate Section 2332a. *See United States v. McVeigh*, 153 F.3d 1166, 1194 (10th Cir. 1998) (holding that Section 2332a requires that conduct was done "knowingly"), *disapproved of on other grounds by Hooks v. Ward*, 184 F.3d 1206 (10th Cir. 1999).

[2] Baptiste's vagueness arguments as to Section 2332a are difficult to conceptualize because they are leveled at the "predicate" statute underlying Counts One through Four, as opposed to the charged statute itself. Accordingly, a vagueness challenge may not even be permissible in this context. Nonetheless, and despite attempting to fit a square peg into a round hole, the government has applied traditional vagueness principles to Baptiste's arguments.

[3] Baptiste also decries the term "weapon of mass destruction" as catchy for politicians but confusing for the ordinary person. (Def. Br. at 6). Baptiste does not appear to argue that the term is unconstitutionally vague, nor could he. The phrase is specifically and carefully defined by statute, *see* 18 U.S.C. § 2332a(c)(2), and includes a clear list of items that, even absent such a list, a person of ordinary intelligence would know could qualify as a weapon of mass destruction. Although his argument is unclear, Baptiste is presumably not arguing that a bomb, grenade, rocket, missile, or mine are confusing concepts or could not cause mass destruction. *See* 18 U.S.C. § 921(a)(4).

*Hoblock*, 368 F.3d 166, 175 (2d Cir. 2004). Where Congress leaves a statutes' words undefined, they are given their ordinary, natural, and plain meaning. *See United States v. Frank*, 599 F.3d 1221, 1234 (11th Cir. 2010).

Relevant Supreme Court precedent reinforces that the language identified by Baptiste is not unconstitutionally vague. For example, the Supreme Court has consistently applied the plain, ordinary meaning of the term "use" when it appears undefined in a statute. As the Court stated in *Watson v. United States*, 552 U.S. 74, 79 (2007), "[w]ith no statutory definition or definitive clue, the meaning of the verb 'uses' has to turn on the language as we normally speak it[.]"; *see also Jones v. United States*, 529 U.S. 848, 854-55 (2000) (noting that undefined term "use" in 18 U.S.C. § 844(i) should be given  ordinary meaning); *United States v. Bailey*, 516 U.S. 137, 143 (1995) (determining the meaning of "use" in the context of 18 U.S.C. 924(c)). Numerous courts of appeals, including the Eleventh Circuit, have taken a similar approach. *See, e.g.*, *United States v. Munksgard*, 913 F.3d 1327, 1334 (11th Cir. 2019) (applying "ordinary meaning" to the undefined term "use" in 18 U.S.C. § 1028(a)(1)); *United States v. Michael*, 882 F.3d 624, 626 (6th Cir. 2018) (same); *United States v. Desposito*, 704 F.3d 221, 226-27 (2d Cir. 2013) (applying "ordinary meaning" from dictionary to the term "use" in 18 U.S.C. § 841(h)(1)); *see also United States v. Thompson*, 728 F.3d 1011, 1015 (9th Cir. 2013) (looking to "ordinary, contemporary, [and] common meaning" of the phrase "uses fire" in  18 U.S.C. § 844(h)(1)). Most significantly, in *United States v. Crawford*, the Second Circuit recently rejected an argument that the term "use" in 18 U.S.C. § 2332h, which prohibits the "use, or … threat[ened] … use of radioactivity-releasing devices,"  was unconstitutionally vague. 714 F. App'x at 34.

Similarly, in the context of a statute about explosives, the ordinary meaning of the term "against" and the broader phrase "against any person or property" as well as the phrase "without lawful authority" are readily understandable and consistent with common usage and dictionary

definitions. "Against" is commonly defined as "in the direction of and into contact with." Merriam-Webster Dictionary (available at https://www.merriam-webster.com/dictionary/against). "Lawful" is defined as "constituted, authorized, or established by law." *Id.* (available at https://www.merriam-webster.com/dictionary/lawful); *see also United States v. Abdelshafi*, 592 F.3d 602, 609 (4th Cir. 2010) (the phrase "without lawful authority" in 18 U.S.C. § 1028A(a)(1) means "without a form of authorization recognized by law"). In other criminal contexts, the Eleventh Circuit has taken an ordinary, plain-meaning approach to the phrase "without lawful authority." *See United States v. Hurtado*, 508 F.3d 603, 607-08 (11th Cir. 2007) (looking to plain meaning of phrase "without lawful authority" in 18 U.S.C. § 1028A(a)(1)); *see also United States v. Maldonado*, 731 F. App'x 831, 833 (11th Cir.) (rejecting, without elaboration, argument that phrase "without lawful authority" in 18 U.S.C. § 1028A(a)(1) was "ambiguous"), *cert. denied*, 138 S. Ct. 2663 (2018).[4] That Baptiste cites no case law in support of his claim, cannot articulate how those terms could be misunderstood as applied to the facts of this case, and focuses only on hypothetical scenarios underscores that Section 2332a's terminology is simply not vague.[5]

Baptiste also argues that a lack of scienter creates a vagueness issue. This argument also fails. Although "a scienter requirement may mitigate a law's vagueness," *Hoffman Estates*, 455 U.S. at 499, Baptiste cites no case in support of the idea that a lack of a scienter requirement itself renders a statute unconstitutionally vague. Indeed, "the absence of a scienter element,

---

[4] The Fifth Circuit has deemed Section 2332a's "without lawful authority" provision an affirmative defense meant "to except from criminal prosecution those persons whose conduct falls within the scope of their employment." *United States v. Wise*, 221 F.3d 140, 149 (5th Cir. 2000).

[5] It is worth noting that the Eleventh Circuit has rejected vagueness challenges to far more abstract words than those identified by Baptiste. *See, e.g.*, *Ibarguen-Mosquera*, 634 F.3d at 1378-79 (phrases "semi-submersible vessel" and "intent to evade" as defined in 18 U.S.C. § 2285 not vague as applied to defendants); *DA Mortg., Inc.*, 486 F.3d at 1271-72 (holding "somewhat abstract" word "convenient" not void for vagueness); *United States v. Eckhardt*, 466 F.3d 938, 943 (11th Cir. 2006) (rejecting vagueness and overbreadth challenge to the words "harass" and "intimidate" in 18 U.S.C. § 223(a)(1)(C)); *Panfil*, 338 F.3d at 1301 (18 U.S.C. § 2422(b) not unconstitutionally overbroad or vague despite inclusion of undefined terms "entice" and "induce").

without more, does not make a law unconstitutionally vague; the inquiry remains whether the statute gives adequate notice to the public and provides sufficient guidance to those charged with enforcing it." *Copeland v. Vance*, 893 F.3d 101, 121 (2d Cir. 2018) (citing *Hill v. Colorado*, 530 U.S. 703, 732 (2000); *see also Duran*, 596 F.3d at 1291 ("we have routinely validated general intent statutes against vagueness challenges without suggesting that the lack of a specific intent component heightens its need for definiteness or otherwise renders the provision susceptible to constitutional doubt.") (citing cases).

Nevertheless, when Congress is silent as to a statute's *mens rea*, courts generally adopt a mental state of "knowingly." *See, e.g.*, *Staples v. United States*, 511 U.S. 600, 620 (1994) (Ginsburg, J., concurring) (explaining that "[a]lthough the word 'knowingly' does not appear in the statute's text, courts generally assume that Congress, absent a contrary indication, means to retain a *mens rea* requirement" and collecting cases); *see also United States v. Campa*, 529 F.3d 980, 1006 (11th Cir. 2008) ("Ordinarily, we interpret statutes that are silent as to mens rea to require proof of general intent."); *United States v. Knight*, 490 F.3d 1268, 1271 (11th Cir. 2007) (18 U.S.C. § 611(a) requires Government to prove a knowing violation, despite statue's lack of scienter element). The one court of appeals to squarely consider the issue has likewise held that Section 2332a requires the government prove that the conduct was done "knowingly." *See McVeigh*, 153 F.3d at1194. In any event, as noted above, Baptiste was not charged with violating Section 2332a, and so any lack of a scienter element would have even less of an impact than in the ordinary case.

Ultimately, Section 2332a's application is obvious in this circumstance. Any reasonable person familiar with the English language would know that activities such as detonating a bomb would qualify under the ordinary meaning of "use," that trying to hurt or kill other people fits a common understanding of "against any person or property," and that these acts lacked "lawful

authority" as that term would ordinarily be understood. *See HLP*, 561 U.S. at 21-22 (holding that "the statutory terms are clear in their application" to the plaintiffs' set of facts because "most of the activities in which plaintiffs seek to engage readily fall within the scope of the terms").

Baptiste never actually contends with the facts of this case. As such, he has not shown that Section 2332a is vague with respect to his own conduct. For this reason alone, his argument should fail. *See United States v. Bonin*, 932 F.3d 523, 537 (7th Cir. 2019) (declining to evaluate merits of vagueness claim where defendant's conduct was "clearly proscribed"); *Hodge v. Talkin*, 799 F.3d 1145, 1172 (D.C. Cir. 2015) ("[s]ignificantly, however, Hodge makes no claim that the statute is vague with respect to its coverage of his *own* conduct"). Instead, Baptiste relies on fanciful hypotheticals (such as the political advertisement example) to make his case. (*See* Def. Br. at 7). Not only are these hypotheticals insufficient to carry his burden, *see Duran*, 596 F.3d at 1290 ("statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language") (quoting *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963)), they were explicitly rejected in a recent case finding Section 2332a *not* unconstitutionally vague, *United States v. Velentzas*, No. 15-CR-213 (SJ), 2019 WL 3252961 (E.D.N.Y. July 16, 2019). Notwithstanding, for the reasons explained *infra* at II.B.1, the facts of this case demonstrate that Baptiste undoubtedly knew his conduct was unlawful. For this reason too, his vagueness argument should be rejected. *See United States v. Edgar*, 304 F.3d 1320, 1327 (11th Cir. 2002) ("an as-applied vagueness challenge 'may be overcome in any specific case where reasonable persons would know that their conduct is at risk.'") (quoting *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988)).

Like the defendants in *Velentzas*, Baptiste is "hard-pressed to argue that [Section 2332a] did not afford people 'of ordinary intelligence a reasonable opportunity to know' that plotting to use pressure cookers and other materials to cause harm . . . was illegal." *Velentzas*, 2019 WL

3252961, at * 5 (citing *Grayned*, 408 U.S. 108). Baptiste has not, and cannot, show that Section 2332a, as applied to him, is vague, and therefore his argument should be rejected.

### 2. Section 2332a Is Not Vague on Its Face

As is clear from his heavy reliance on hypotheticals divorced from the facts of this case, Baptiste's predominant focus is on the facial validity of the statute. But, as noted above, a facial vagueness challenge is highly disfavored and often an as-applied analysis is the only appropriate consideration. *See Farhane*, 634 F.3d at 138 ("In the absence of First Amendment concerns, courts generally view vagueness challenges to a statute as applied to the defendant's case."). Indeed, in hinging his argument on speculative hypotheticals, Baptiste contravenes the Supreme Court's mandate that "[i]n determining whether a law is facially invalid, we must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *Wash. State Republican Party,* 552 U.S. at 449-50.

Notwithstanding, and to the extent that a facial challenge may even be maintained, the test is a variation of the as-applied analysis, requiring Baptiste to show "that the law is impermissibly vague in all of its applications." *Hoffman Estates*, 455 U.S. at 497); *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1261 (11th Cir. 2012) (requiring that, as to a facial challenge, a statute be "unconstitutional in all applications"). Here, since Baptiste cannot succeed in showing that the statute is vague as applied to the facts of his case, he necessarily cannot prove that it is vague in "all of its applications."

Baptiste seeks to avoid this result by arguing that Section 2332a implicates his First Amendment rights, and that therefore a facial vagueness challenge may still be maintained. First, Section 2332a does not implicate, let alone infringe upon, free speech or expression under the Constitution. Baptiste's charged conduct involved providing explosives-making instructions to other likeminded individuals with the intent that this information be used in furtherance of a

violation of Section 2332a. The First Amendment does not extend its immunity to criminal conduct, especially the crimes here at issue. *See N.A.A.C.P. v. Claiborne Hardware*, 458 U.S. 886, 916 (1982) ("The First Amendment does not protect violence. Certainly violence has no sanctuary in the First Amendment, and the use of weapons, gunpowder, and gasoline may not constitutionally masquerade under the guise of advocacy.") (internal quotation marks and citation omitted). As one court in this District has put it, "[t]he First Amendment provides no protection for the conduct of providing resources knowing and intending that they be used for crimes of violence." *United States v. Jayyousi*, No. 04-60001-CR, 2007 WL 781373, at *2 (S.D. Fla. Mar. 12, 2007) (citing *United States v. Sattar*, 314 F. Supp. 2d 279, 301 (S.D.N.Y. 2004)).

To be sure, Baptiste's "speech" is part-and-parcel of the charged conduct, but that in no way renders his argument any more persuasive. *See Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949) ("it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed."); *United States v. Clum*, 607 F. App'x 922, 928 (11th Cir. 2015) ("speech that is integral to criminal conduct" "may be restricted and punished without raising a Constitutional problem") (citing *Giboney*, 336 U.S. at 498). As is well known, "[m]any long established criminal proscriptions—such as laws against conspiracy, incitement, and solicitation—criminalize speech (commercial or not) that is intended to induce or commence illegal activities." *United States v. Williams*, 553 U.S. 285, 293 (2008). The constitutionality of such laws is well-established. *See id*.; *United States v. Stevens*, 559 U.S. 460, 468-469 (2010) (including "speech integral to criminal conduct" as a class of speech "'which ha[s] never been thought to raise any Constitutional problem'") (citation omitted); *International Bhd. of Elec. Workers v. NLRB*, 341 U.S.694, 705 (1951) (concluding that it "carries no unconstitutional abridgment of free speech" for Congress to prohibit "inducement or

encouragement" of an unlawful secondary boycott); *Giboney*, 336 U.S. at 498 ("the constitutional freedom for speech and press" does not "extend[] its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute.").

Even if the only proof of Baptiste's crimes were through words and not actions, that fact would not alter the analysis. "Speech is not protected by the First Amendment when it is the very vehicle of the crime itself." *United States v. Rahman*, No. S3 93 CR. 181 (MBM), 1994 WL 388927, at *1-2 (S.D.N.Y. July 22, 1994) (internal quotation marks and citation omitted), *aff'd in pertinent part*, *United States v. Rahman*, 189 F.3d 88, 114-15 (2d Cir. 1999) (holding that First Amendment challenge to seditious conspiracy statute was "without merit"). Indeed, the Supreme Court recently reiterated this principle. *See Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017) ("Specific criminal acts are not protected speech even if speech is the means for their commission.").[6]

Moreover, even if the First Amendment were implicated in this case, courts do not conduct additional assessment beyond the "all applications" test described by *Hoffman Estates*. Baptiste incorrectly argues that a statute may be void for vagueness if it "regulates a substantial amount of protected speech." (*See* Def. Br. at 3). The Supreme Court, however, has clearly held that the vagueness doctrine "makes no exception for conduct in the form of speech . . . Thus, even to the extent a heightened vagueness standard applies, a plaintiff whose speech is clearly proscribed cannot raise a successful vagueness claim under the Due Process Clause of the Fifth Amendment for lack of notice. And he certainly cannot do so based on the speech of others."

---

[6] For largely the same reasons, Baptiste's invocation of *Brandenburg v. Ohio*, 395 U.S. 444 (1969), is also inapposite. Section 2332a does not criminalize "mere advocacy." Rather, it criminalizes conduct that, in only some instances, may include elements of speech. *See, e.g.*, *United States v. Sattar*, 395 F. Supp. 2d 79, 102 (S.D.N.Y. 2005) ("*Brandenburg* analysis does not apply to unlawful speech-acts such as conspiracy or aiding and abetting") (citation omitted), *aff'd sub nom. United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009); *see also United States v. Bell*, 414 F.3d 474, 482 n.8 (3d Cir. 2005) ("*Brandenburg* clearly does not apply to the kind of unprotected or unlawful speech or speech-acts (*e.g.* aiding and abetting, extortion, criminal solicitation, conspiracy, harassment, or fighting words) at issue . . . here.").

*HLP*, 561 U.S. at 20; *United States v. Di Pietro*, 615 F.3d 1369, 1372 (11th Cir. 2010) ("Recently, the Court clarified that the rule makes no exception for vagueness challenges that implicate the First Amendment.") (citing *HLP*, 561 U.S. at 17-18). Thus, Baptiste cannot show that Section 2332a is vague in all of its possible applications, let alone as applied to the facts of this case. His facial vagueness challenge should therefore be denied. *See Velentzas*, 2019 WL 3252961, at * 5-7 (rejecting argument that Section 2332a is facially vague).

### C. <u>Section 2332a Is Not Overbroad</u>

Baptiste's claim of overbreadth also fails. A law is unconstitutionally overbroad if it "punishes a substantial amount of protected free speech, judged in relation to [its] plainly legitimate sweep." *Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003) (internal quotation marks omitted). Mindful that such relief is "strong medicine," the law rigorously enforces the burden on the challenging party to demonstrate "substantial" infringement of speech. *Williams*, 553 U.S. at 292; *see also Broadrick*, 413 U.S. at 612 (overbreadth should be used "sparingly and only as a last resort."). Substantial overbreadth requires "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court[.]" *Doe v. Valencia Coll.*, 903 F.3d 1220, 1232 (11th Cir. 2018).

Even where a statute may hypothetically sweep in some protected conduct, "there comes a point at which the chilling effect of an overbroad law, significant though it may be, cannot justify prohibiting all enforcement of that law—particularly a law that reflects 'legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct.'" *Hicks*, 539 U.S. at 119 (quoting *Broadrick*, 413 U.S. at 615). Therefore, the Supreme Court has "insisted that a law's application to protected speech be substantial, not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications." *Hicks*, 539 U.S. at 119-20 (quotations and citation omitted). Moreover, "[r]arely, if ever, will an

overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Id*. at 124.

Baptiste cannot demonstrate that Section 2332a is substantially overbroad. First, as detailed *supra*, the First Amendment is not implicated by the type of conduct the statute intends to prohibit. The conduct associated with using a weapon of mass destruction against a person or property is not protected speech in any circumstance. Baptiste can only conjure up theoreticals, such as using a weapon of mass destruction as a paper weight, an item to be photographed, or an art installation. (*See* Def. Br. at 7). None of those proffered activities would satisfy the statute when its terms are given an ordinary and common sense meaning. Indeed, identical hypotheticals were offered and rejected in *Velentzas*, which found Section 2332a neither vague nor overbroad. 2019 WL 3252961, at *5-7.

Even if these examples could come close to the penumbra of the statute's reach, these isolated concerns would fall far short of a "substantial" infringement on speech. *See Hicks*, 539 U.S. at 119; *Broadrick*, 413 U.S. at 615. As the Eleventh Circuit has stated, "one imaginative hypothetical does not justify applying the 'strong medicine' of the overbreadth doctrine." *United States v. Martinez*, 736 F.3d 981, 989 (11th Cir. 2013), *vacated on other grounds*, 135 S. Ct. 2798 (2015); *see also United States v. Dean*, 635 F.3d 1200, 1206 (11th Cir. 2011) ("the 'mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.'") (quoting *Williams*, 553 U.S. at 303).

By contrast, the vast majority of potential applications fit comfortably within constitutional bounds. Indeed, individuals have been tried and convicted on multiple occasions, in this Circuit and elsewhere, of violations of Section 2332a based on facts that raise no constitutional concerns. *See, e.g.*, *United States v. Suarez*, 893 F.3d 1330 (11th Cir. 2018)

17

(affirming conviction where defendant attempted to use weapon mass destruction by placing a bomb on a Key West, Florida beach), *cert. denied*, 139 S. Ct. 845 (2019); *United States v. Mohamud*, 843 F.3d 420 (9th Cir. 2016) (affirming conviction where defendant attempted to use weapon of mass destruction by placing a bomb at a tree-lighting ceremony); *United States v. Mann*, 701 F.3d 274 (8th Cir. 2012) (affirming conviction where defendant used weapon of mass destruction by detonating bomb in a tire near victim's car); *United States v. Khalil*, 214 F.3d 111 (2d Cir. 2000) (affirming convictions for conspiring and threatening to use a weapon of mass destruction where defendants planned to detonate bomb in subway or bus terminal); *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93 (2d Cir. 2008) (affirming convictions of defendants involved in conspiracy to detonate truck bombs outside U.S. Embassies in Kenya and Tanzania); *United States v. Viscome*, 144 F.3d 1365 (11th Cir. 1998) (affirming convictions of defendants who built and planted bomb placed under car of spouse of one defendant); *United States v. Nichols*, 169 F.3d 1255 (10th Cir. 1999) (affirming conviction of defendant for his involvement in Oklahoma City Bombing conspiracy). Because Section 2332a appropriately applies to such a large number of instances of unprotected conduct related to violent acts and terrorism, the statute's "legitimate reach dwarfs its arguably impermissible applications." *New York v. Ferber*, 458 U.S. 747, 773 (1982). The number of hypothetically inappropriate applications amounts to, at most, no more than "a tiny fraction of the [instances] within the statute's reach." *Id*. Accordingly, Baptiste has not carried his burden of establishing that, even if his hypotheticals were actually subject to criminalization, prohibition of such acts would demonstrate substantial overbreadth in an absolute sense or relative to the statute's legitimate sweep. Baptiste's argument therefore fails.

## II.     Section 842(p) Is Not Vague or Overbroad

For largely the same reasons as described above, Section 842(p) is neither vague nor overbroad. The same legal standards related to the vagueness and overbreath doctrines that were applied to Section 2332a, *see supra*, apply to this statute.

### A.  Statutory Language

Title 18, United States Code, Section 842(p)(2)(A) provides:

> (2) Prohibition. -- It shall be unlawful for any person –
>> (A) to teach or demonstrate the making or use of an explosive, a destructive device, or a weapon of mass destruction, or to distribute by any means information pertaining to, in whole or in part, the manufacture or use of an explosive, destructive device, or weapon of mass destruction, with the intent that the teaching, demonstration, or information be used for, or in furtherance of, an activity that constitutes a Federal crime of violence. . . .

The terms "destructive device," "explosive," and "weapon of mass destruction" are defined under 18 U.S.C. § 842(p)(1)(A)-(C), as follows:

> (p) Distribution of Information Relating to Explosives, Destructive Devices, and Weapons of Mass Destruction.—
>> (1) Definitions.--In this subsection—
>>> (A) the term "destructive device" has the same meaning as in section 921(a)(4);
>>> (B) the term "explosive" has the same meaning as in section 844(j); and
>>> (C) the term "weapon of mass destruction" has the same meaning as in section 2332a(c)(2).

"Explosive" is defined in 18 U.S.C. § 844(j):

> (j) For the purposes of subsections (d), (e), (f), (g), (h), and (i) of this section and section 842(p), the term "explosive" means gunpowders, powders used for blasting, all forms of high explosives, blasting materials, fuzes (other than electric circuit breakers), detonators, and other detonating agents, smokeless powders, other explosive or incendiary devices within the meaning of paragraph (5) of section 232 of this title, and any chemical compounds, mechanical mixture, or device that contains any oxidizing and combustible units, or other ingredients, in such proportions, quantities, or packing that ignition by fire, by friction, by concussion, by percussion, or by detonation of the compound, mixture, or device or any part thereof may cause an explosion.

### B.  Section 842(p) Is Not Vague

#### 1.  Section 842(p) Is Not Vague As Applied to this Case

Baptiste's as-applied challenge to Section 842(p) fails for reasons similar to those pertaining to his Section 2332a challenge. First, reading the statute as a whole, a person of ordinary intelligence would be on notice that Baptiste's conduct was proscribed by a statute that criminalizes "teach[ing] or demonstrat[ing]" or "distribut[ing] information pertaining to the manufacture or use of an explosive, destructive device, or weapon of mass destruction, with the intent that [such information] be used for, or in furtherance of, an activity that constitutes a Federal crime of violence." 18 U.S.C. § 842(p). Baptiste distributed bomb-making information on a chatroom devoted to jihadist causes. And he did so within the context of discussing and intimating violence.

For example, at one point, Baptiste posted the following message:

A lot of people, masha'Allah [thank God] have the niyyah of going out Fi sabillah [for the sake of God] to make hijrah [emigrate to ISIS-controlled territory]. Some make it, some get caught, others are scared to go and just talk all day about it while sine due to surveillance, investigations, or obstacles such as no feasible was to get there (note: hijrah is not jst to Iaq or Sham but to any wilayat as per Adnani [ISIS' spokesperson] rahimahulla and Amirul-Mu'minun hafizahullah words). Yet some don't want to go or cant go and would rather be a brave knight within the heartland of the kuffar [unbelievers]. Yet they only think of the act and not afterwards, meaning no contingency or escape plan. As we see with the Boston Bombing and other noble projects. Unless you are seeking istishahaddah [martyrdom] then you need a plan. Safehouse, duck-off, get-away or whatever you want to call it. You must think of what happens if things don't go as plan (ukht who tried to kill yahudi by blowing self up and belt malfunction) and such. Before the ayah to fight: "Fighting had been prescribed for you..." We were comannded to "Prepare against them what you can..."[7]

Immediately after this post, Baptiste stated:
Disclaimer: This channel is in no way advocating of making a call to any form of actions. Informational purposes only…..but what is information if you don't use it?

At another point, after posting an article about ISIS' Improved Explosive Device capabilities,

Baptiste stated: "Read yourself how the kuffar are instilled with fear of their J-gear [*i.e.*, jihadi-

---

[7] All errors are in the original.

gear], *get your own*." (emphasis added).

Then, immediately prior to sending two links to explosives instructions, Baptiste posted

the following Quranic verse:

> And prepare against them whatever you are able of power and of steeds of war by which you may terrify the enemy of Allah and your enemy and others besides them whom you do not know [but] whome Allah knows […][8]

After posting the two links, Baptiste stated:

> Disclaimer: If you click link without VPN on any sensitive subject you do so at your own peril. I suggest Tor or any others. […] What's considered as sensitive links are anything that if you put in Google search on your phone would put you under scrutiny. Examples: If you Google 'how to get to Raqqah or Mosul' 'speech of khalifa' Or anything with the terms of 'how to make…' ending with the terms bombs, explosives, or military grade weapons."

Prior to posting the next link Baptiste stated as follows:

> I advise you all to share this information and internalize it. Maybe you don't go out fi sabillillah, maybe just maybe you are one of the creative ones who would try to paint the red pictures in your own lands. Perhaps this is furthest from your mind and you want to simply know how to react when things hit the fan. Or maybe you know people whom this may benefit. Without further ado or delay I must let you know that guns are no longer pointed at sky but rather they are pointed at you. Main point: please share[.]

Again, all of this was in the context of a chatroom devoted to jihadism, ISIS, weaponry, and

violence. Baptiste cannot now claim surprise that distributing explosives information while

encouraging others (even cryptically) to use it in relation to a crime of violence was made illegal

by Section 842(p). And of course, Baptiste's post facto feigning of ignorance is belied by his

own words cautioning his "Jihadi gear(Private)" audience to use precautions when Googling the

terms "'how to make…' ending with the terms bombs, explosives, or military grade weapons."

Baptiste's as-applied challenge must fail because he never explains how Section 842(p) could be

vague given these facts. *See Edgar*, 304 F.3d at 1327; *United States v. Carlson*, 87 F.3d 440, 444

---

[8] This is a commonly cited verse in jihadist literature. One study even called this verse (Quran 8:60) "the most frequent verse featured in the Salafi-jihadi content[.]" *See* Comerford and R. Bryson, *Struggle over Scripture: Charting the Rift between Islamist Extremism and Mainstream Islam*, London: Tony Blair Institute for Global Change, 2017, at 19.

(11th Cir. 1996) (rejecting vagueness challenge because "[t]he defendants here obviously had actual notice that possessing precursor chemicals was prohibited.").

Instead, Baptiste again focuses on undefined phrases in the statute. (*See* Def. Br. at 13). As with Section 2332a, each of the terms Baptiste identifies as vague in Section 842(p), given their ordinary meaning and placed within the context of the statute, can be readily understood by an ordinary reasonable person.[9] The phrase "distribute by any means information pertaining to, in whole or in part, the manufacture or use," while perhaps unwieldy, is nonetheless clear. *Cf. United States v. Bronstein*, 849 F.3d 1101, 1108 (D.C. Cir. 2017) (that challenged phrases "may not roll off the average person's tongue today does not alter their possession of a settled meaning around public speeches."). Conduct proscribed by Section 842(p) includes "distribution," a word whose ordinary definition is readily understood, of any information related to building or using an explosive when done with the intent to further a crime of violence. As *Velentzas* stated in rejecting a vagueness challenge to Section 842(p), "the fear of the statute not providing people with adequate notice is 'insubstantial and remote[.]'" 2019 WL 3252961, at *8. The only other district court to have fully addressed this issue has held similarly:

> The statute affords people of ordinary intelligence the opportunity to understand what conduct is prohibited and does not foster arbitrary, discriminatory, or capricious enforcement. This is particularly true in light of the statute's intent requirement that such teaching or demonstration must be carried out with the intent to commit a federal crime of violence.

*United States v. Coronado*, 461 F. Supp. 2d 1209, 1216-17 (S.D. Cal. 2006); *see also United States v. Brice*, No. CR-11-0075-LRS, 2012 WL 12905597 (E.D. Wash. Apr. 24, 2012) (finding, albeit with little discussion, Section 842(p) not vague). "The plain language and ordinary meaning of the words [in Section 842(p)] make it abundantly clear the type of speech

---

[9] Remarkably, Baptiste finds vagueness in the statute for its "failure to define the phrase 'distribute by any means information pertaining to, in whole or in part, the manufacture or use[.]'" (Def. Br. at 13). Here, Baptiste quotes practically the entire statute. Of course, there is no requirement that a statue define every single one of its words. Such a prospect would lead to absurd results and Baptiste cites no case for this novel proposition.

criminalized, and any potential vagueness implications are mitigated by the statute's final clauses, limiting liability to those with violent intentions, which are not protected by the Constitution." *Velentzas*, 2019 WL 3252961, at *8 (citing *Coronado*, 461 F. Supp. 2d at 1213) ("It is only when the teaching or demonstration of a destructive device is coupled with specific intent to commit a federal crime of violence that an individual runs afoul of the statute."). For this reason, Baptiste's fear that the statute might inadvertently criminalize teaching, for example, "exothermic and endothermic reactions," is simply a red herring. As *Velentzas* held, "[e]ven if teaching, demonstrating, or distributing information about math, physics, chemistry, or the myriad subjects referenced by the Defendant's brief is protected, doing so with violent intent is not." 2019 WL 3252961, at *8 (internal citation omitted).

Baptiste also argues that Section 842(p) is vague for failing to define "federal crime of violence." That is also incorrect. As Baptiste practically concedes (*see* Def. Br. at 14-15), the Supreme Court has made clear that Section 842(p), like many others, incorporates the definition of crime of violence under Title 18, United States Code, Section 16.[10] *See Leocal v. Ashcroft*, 543 U.S. 1 (2004) (specifically citing Section 842(p) for the proposition that "a number of statutes criminalize conduct that has as an element the commission of a crime of violence under § 16").[11]

---

[10] Numerous other statues leave the phrase "crime of violence" undefined. *See, e.g.*, 18 U.S.C. § 929(a)(1) (criminalizing possession of restricted ammunition in commission of a crime of violence); 18 U.S.C. § 1959(a) (violent crimes in aid of racketeering activity); 18 U.S.C. § 1959(a)(4) (criminalizing threats to commit a crime of violence in aid of racketeering activity); 18 U.S.C. § 3521(a)(1) (providing witness relocation protection when a crime of violence is directed at a witness); 18 U.S.C. § 5032 (discussing juvenile delinquency proceedings and transfer for criminal prosecution); 18 U.S.C. § 5038 (allowing preparation and use of juvenile records where the act committed, if it had been committed by an adult, would be a felony and a crime of violence).

[11] In a subsequent part of his motion, Baptiste also argues that Counts One through Four should be dismissed under Fed. R. Crim. P. 12(b)(3)(B)(v) for failure to state an offense. (*See* Def. Br. at 19-20). According to Baptiste, Section 2332a is not a crime of violence under 18 U.S.C. § 16. Section 2332a, however, is clearly "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]" *See* 18 U.S.C. § 16(a). *Cf. In re Amawi*, __F. App'x__, No. 18-3949, 2019 WL 3202933, at *2-4 (6th Cir. July 16, 2019) (Section 842 predicates still crimes of violence under Section 16(a) after *Dimaya*). It is, therefore, a crime of violence. *See Velentzas*, 2019 WL 3252961, at * 8 ("the Court finds that § 2332a(a)(2) is a crime of violence under § 842(p)(2)(A) and therefore the Indictment sufficiently states a criminal offense"); *United States v. Tsarnaev*, 157 F.

Finally, Baptiste again claims that there is no scienter requirement in the statute. (*See* Def. Br. at 15). This too is wrong. The statute requires that a defendant have the specific intent that the explosives information be used for or in furtherance of a crime of violence. *See Coronado*, 461 F. Supp. 2d at 1213 ("[t]he specific focus of the statute is not on mere teaching, demonstrating, or disseminating information on how to construct a destructive device, but upon teaching, demonstrating, or disseminating information with the specific intent that the knowledge be used to commit a federal crime of violence."); *Velentzas*, 2019 WL 3252961, at *8. Furthermore, as noted above, even if Section 842(p) did lack a scienter requirement, that would not on its own render the statute unconstitutionally vague. *See Duran*, 596 F.3d at 1291; *Copeland*, 893 F.3d at 121.

### 2. Section 842(p) Is Not Vague on Its Face

Finally, Baptiste's argument that Section 842(p) is facially vague is also without merit. As explained above, a defendant needs to show that "all applications" of a statute are vague to succeed on a facial challenge. Here, the facts of Baptiste's case illustrate that Section 842(p), in at least one circumstance (meaning, as-applied to the defendant), is not unconstitutionally vague. As noted above, the only two courts to have addressed this issue have declined to find Section 842(p) unconstitutionally vague. *See Velentzas*, 2019 WL 3252961, at *8; *Coronado*, 461 F. Supp. 2d at 1216-17. As *Coronado* held, "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on the statute when it is surely valid in the vast majority of its intended applications[.]" 461 F. Supp. 2d at 1217 (quoting *Hill*, 530 U.S. at 730). For the same reasons, Baptiste's facial vagueness argument should be rejected.

---

Supp 3d 57, 76-77 (D. Mass. 2016) (18 U.S.C. § 2332a(c)(2) a crime of violence under 18 U.S.C. § 924(c)(3)(A)); *see also Khalil*, 214 F.3d at 121-22 (specifically noting § 2332a as a crime of violence); *United States v. Spring*, 108 F. App'x 116, 123 (4th Cir. 2004) (describing "two counts of threatening to use a weapon of mass destruction in violation of 18 U.S.C. § 2332a" as "offenses that constitute 'crimes of violence under § 4B1.2" of the Sentencing Guidelines).

## C.  Section 842(p) Is Not Overbroad

Baptiste likewise cannot show that Section 842(p) is substantially overbroad. As with his argument regarding Section 2332a, Baptiste's farfetched hypotheticals about the government criminalizing innocuous internet postings, chemistry, and physics, (*see* Def. Br. at 13), are insufficient to carry his burden. *See Martinez*, 736 F.3d at 989; *Dean*, 635 F.3d at 1206. Baptiste's examples completely ignore the second half of the statute, which limits criminal liability to individuals who distribute information related to explosives *with the specific intent* that such information be used in or in furtherance of a crime of violence. *See* 18 U.S.C. § 842(p). As *Coronado* explained in denying a similar overbreadth challenge, "[t]he specific focus of the statute is not on mere teaching, demonstrating, or disseminating information on how to construct a destructive device, but upon teaching, demonstrating, or disseminating information with the specific intent that the knowledge be used to commit a federal crime of violence." 461 F. Supp. 2d at 1213. Indeed, a predecessor statute to Section 842(p) applied similar "teaching" language to a criminal statute, *see* 18 U.S.C. § 231(a) (making it a crime to "teach[] or demonstrate[]" the "use, application or making of any firearm or explosive" knowing that it would be "unlawfully employed for use in . . . civil disorder"), and was found not overbroad by at least two courts of appeals. *See Coronado*, 461 F. Supp. 2d at 1213-14 (discussing *United States v. Featherston*, 461 F.2d 1119 (5th Cir. 1972) and *National Mobilization Committee to End the War in VietNam v. Foran*, 411 F.2d 934 (7th Cir. 1969)). In other words, Section 842(p)'s specific intent requirement insulates it from Baptiste's overbreadth challenge. *Accord United States v. Waggy*, 936 F.3d 1014 (9th Cir. 2019) (specific intent requirement insulates telephone harassment statute from First Amendment as applied challenge); *United States v. Gonzalez*, 905 F.3d 165, 190-94 (3d Cir. 2018) (similar, regarding 18 U.S.C.A. § 2261A, the federal cyberstalking statute), *cert. denied*, 139 S. Ct. 2727 (2019); *United States v. Sayer*, 748 F.3d 425, 434 (1st Cir. 2014) (same).

Contrary to Baptiste's proffered parade of horribles, (*see* Def. Br. at 13), a science professor teaching chemical reactions to college students will not be charged with violating Section 842(p) because, unlike Baptiste, this professor is not instructing his or her students on how to build a bomb with the intent that they use such information to commit acts of violence. Section 842(p) is not overbroad and therefore Baptiste's motion should be denied.

### III.  Counts One Through Six do Not Violate the First Amendment

Baptiste also argues that Counts One through Six (or portions thereof) violate the First Amendment. (*See* ECF No. 80) hereafter "Def. Br.")). The entirety of Baptiste's brief, however, addresses Count Five (attempting to provide material support to ISIS, in violation of 18 U.S.C. § 2339B(a)(1)). In fact, not once does the brief's argument section cite 18 U.S.C. §§ 842(p)(2)(A) (Counts One through Four) or 2339A(a) (Count Six). The Government therefore only addresses Baptiste's arguments as to Count Five.

With respect to Count Five, much of Baptiste's argument amounts to a "sufficiency of the evidence" claim. (*See* Def. Br. at 7 ("[T]he government has not produced and cannot not produce any evidence…."); 8 ("[t]here is no evidence that the defendant's speech…."); 9 ("[t]he evidence does not indicate that Mr. Baptiste intended that his speech")). It is well established, however, that such arguments are inappropriate in the context of a motion to dismiss. *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004) ("There is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence. . . . The sufficiency of a criminal indictment is determined from its face. The indictment is sufficient if it charges in the language of the statute.") (citing *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992)).[12]

---

[12] The remainder of Baptiste's brief addresses the jurisprudence of incitement under *Brandenburg v. Ohio*, 395 U.S. 444 (1969), and "true threats" under *Virginia v. Black*, 538 U.S. 343 (2003). (*See* Def. Br. at 8-10). Because Baptiste was not charged with making threats under, for example, 18 U.S.C. § 875(c), these cases are inapposite.

Notwithstanding, Baptiste's First Amendment argument misses the point. Count Five charges Baptiste with violating 18 U.S.C. § 2339B(a)(1) by attempting to provide material support in the form of services and personnel to ISIS, and aiding and abetting the same. Section 2339B prohibits "knowingly provid[ing] material support or resources to a foreign terrorist organization, or attempt[ing] or conspir[ing] to do so." *Id.* § 2339B(a)(1). "Material support or resources" means "any property . . . or service, including currency . . ., training, expert advice or assistance . . ., weapons . . ., explosives, [and] personnel (1 or more individuals who may be or include oneself)." 18 U.S.C. § 2339A(b); *see Suarez*, 893 F.3d at 1334-35. "A defendant is guilty of attempt when (1) he has a specific intent to engage in the criminal conduct for which he is charged and (2) he took a substantial step toward commission of the offense." *United States v. Jockisch*, 857 F.3d 1122, 1129 (11th Cir. 2017); *see also Suarez*, 893 F.3d at 1334-35 (applying *Jockisch* to Section 2339B). Under Section 2339B, "a substantial step towards the provision of material support need not be planned to culminate in actual terrorist harm, but only in support—even benign support—for an organization committed to such harm." *Farhane*, 11 634 F.3d at 148.

The Government is not required to prove that Baptiste successfully completed any of his actions. As the Eleventh Circuit recently held, "it is irrelevant that [the defendant] did not make contact with ISIS, because the law requires only that [he] directed (or attempted to direct) his services to ISIS." *Suarez*, 893 F.3d at 1335; *see also United States v. Pugh*, 937 F.3d 108, 118-20 (2d Cir. 2019) (rejecting argument that defendant could not have taken substantial step toward violating Section 2339B without an ISIS contact); *United States v. Dhirane*, 896 F.3d 295, 303 (4th Cir. 2018) ("determining that Mohamed and Abdullahi, to whom monies were transmitted, were part of al-Shabaab was not necessary to finding that the defendants had provided or

attempted to provide material support to al-Shabaab."), *cert. denied sub nom. Jama v. United States*, 139 S. Ct. 1207 (2019).

Here, Baptiste, on a chatroom devoted to jihadism and ISIS that he administered, provided explosives instructions to like-minded ISIS followers and supporters with the hope and intent that some of them would themselves use the instructions to commit attacks (using explosives) in the name of ISIS. That is, he attempted to provide ISIS with personnel (people who will commit attacks in the name of ISIS) and services (attacks committed in the name of ISIS or that can be claimed by ISIS). *Cf. United States v. Augustin*, 661 F.3d 1105, 1119-20 (11th Cir. 2011) (defendants "volunteering . . . their service to Al Qaeda" was "sufficient for a jury to deem it material support in the form of personnel."). Baptiste was also charged with aiding and abetting those other individuals' attempts to provide the same forms of material support to ISIS.  How any of this runs afoul of the First Amendment is never quite explained in Baptiste's brief.

Baptiste is not charged with "speech crimes." Rather, he is charged with attempting to provide material support in the form of personnel and services to ISIS. That Baptiste's attempted material support may have been carried out through forms of speech is insufficient to bring this case within the First Amendment's heartland. As noted above, "it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Giboney*, 336 U.S. at 502; *see also id.* at 498 ("the constitutional freedom for speech and press" does not "extend[] its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute."); *see also Packingham*, 137 S. Ct. at 1737 ("Specific criminal acts are not protected speech even if speech is the means for their commission."); *Stevens*, 559 U.S. at 468 (speech integral to criminal conduct does not raise

constitutional concerns); *Sayer*, 748 F.3d at 434 ("Speech integral to criminal conduct is now recognized as a "long-established category of unprotected speech."); *United States v. Osinger*, 753 F.3d 939, 946 (9th Cir. 2014) (same); *United States v. Price*, 775 F.3d 828, 838 (7th Cir. 2014) (same). Were it not so, every prosecution involving a defendant's use of words would be constitutionally suspect. *See United States v. Hassan*, 742 F.3d 104, 125 (4th Cir. 2014) (prohibited conduct cannot "be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea.") (quoting *Wisconsin v. Mitchell*, 508 U.S. 476, 484 (1993)).

For this reason, Baptiste's reliance on the Supreme Court's decision in *Humanitarian Law Project* is misplaced. (*See* Def. Br. at 6-8). There, the plaintiffs sought to provide legal services to two Foreign Terrorist Organizations. As relevant here, the Court rejected the plaintiffs' First Amendment associational rights argument, holding that because Section 2339B "does not penalize mere association with a foreign terrorist organization . . . [and] . . . does not prohibit being a member of one of the designated groups or vigorously promoting and supporting the political goals of the group. . . . What [Section 2339B] prohibits is the act of giving material support. . . ." *HLP*, 561 U.S. at 39-40 (internal quotation marks and citation omitted). Here, Baptiste is not charged with being a member of ISIS, seeking to provide legal services to ISIS, or independently advocating on their behalf. Instead, he is charged with attempting to provide ISIS with personnel (people who will commit attacks in the name of ISIS) and services (attacks committed in the name of ISIS or that can be claimed by ISIS). This is hardly the type of service at issue in *Humanitarian Law Project*, and precedent clearly demonstrates that Baptiste's charged conduct is not protected under the First Amendment. *See United States v. Hammoud*, 381 F.3d 316, 329 (4th Cir. 2004) (en banc) ("§ 2339B does not prohibit mere association; it prohibits the conduct of providing material support to a designated FTO . . . the Government's interest in curbing terrorism is unrelated to the suppression of free expression. Hammoud is free

to advocate in favor of Hizballah or its political objectives-§ 2339B does not target such advocacy."), *vacated on other grounds*, 543 U.S. 1097 (2005); *see also United States v. Afshari*, 426 F.3d 1150, 1160 (9th Cir. 2005) ("The fact that the support takes the form of money does not make the support the equivalent of speech. In this context, the donation of money could properly be viewed by the government as more like the donation of bombs and ammunition than speech."); *People's Mojahedin Org. of Iran v. Dept. of States*, 327 F.3d 1238, 1244 (D.C. Cir. 2003) ("It is conduct and not communication that the statute controls"); *Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1026 (7th Cir. 2002) ("Section 2339B prohibits only the provision of material support (as that term is defined) to a terrorist organization. There is no constitutional right to provide weapons and explosives to terrorists, nor is there any right to provide the resources with which the terrorists can purchase weapons and explosives"); *Humanitarian Law Project v. Reno*, 205 F.3d 1130, 1135 (9th Cir. 2000) ("the material support restriction . . . is not aimed at interfering with the expressive component of [an individual's] conduct but at stopping aid to terrorist groups"). Accordingly, Baptiste's attempt to infuse constitutional issues into his case is futile and his motion should be denied.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court deny Baptiste's Motions to Dismiss (ECF Nos. 80, 81).[13]

Respectfully submitted,

**ARIANA FAJARDO ORSHAN**
UNITED STATES ATTORNEY

By:   /s/ Marc S. Anton_____
MARC S. ANTON
Assistant U.S. Attorney
Florida Bar No. 0148369
500 East Broward Blvd., Suite 700
Ft. Lauderdale, Florida 33394
Tel: (954) 660-5096
Fax: (954) 356-7230
Marc.anton@usdoj.gov

Joseph Attias
U.S. Department of Justice
National Security Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
Tel: (202) 616-0736
joseph.attias@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 16, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/ Marc S. Anton_____
Assistant U.S. Attorney

---

[13] Baptiste also argues that Counts One through Six should be dismissed under Fed. R. Crim. P. 12(b)(3)(B)(iii) for lack of specificity. (*See* Def. Br. at 18-19). Baptiste's argument on this score amounts to a request for more information and is virtually a restatement of his Motion for a Bill of Particulars. (*See* ECF No. 78). As the Government noted in its response to the Motion for a Bill of Particulars (*see* ECF No. 87), Defense Counsel has received more than sufficient information through traditional discovery and discovery conferences with the Government.