UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-20613-CR-MARTINEZ/OTAZO-REYES

UNITED STATES OF AMERICA
                Plaintiff,

ABDUL-JALIL RASHID AL-IMARAH
        (S. BAPTISTE)
        Defendant,
_____/

FILED BY ___PG___ D.C.
NOV 13 2019
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## MOTION TO APPEAL MAGISTRATE'S JUDGE DENIAL OF COUNSEL'S MOTION TO WITHDRAW

Come now, on the 27th of September the court granted the defendant's motion to substitute counsel. On that day during a brief dialogue with the court about counsel Omar Malone, and the concerns that I had about him embodied in such mo-tion and expressed verbally on that day, the court heard and listened to such concerns. I candidly and repeatedly expressed to the court that my need for c-ounsel was not based on having any particular counsel of choice but of one not simply with legal experience but experience in reviweing, handling, and dealin-g with material support cases that have classified information in discovery d-ue to CIPA considerations in place and this defendant's anticipation and beli-ef that there may also exist FISA material in connection to the case. The co-urt inquired as to whether I wanted a Muslim attorney, at which time I replied that I simply want decent counsel possessing the aforementioned traits and ex-perience in terrorism cases.

After discussion, previous counsel Omar Malone mentioned that there are not much cases of that type in SDFL. Perhaps previous Counsel equate-d terrorism with Islam or the like but there have been numerous terrorism prosecutions in SDFL from FTO's like FARC, Hizbollah, and Al-Qaeda. Most of the FARC prosecutions, if not all, have taken place in SDFL.

Counsel Louis Casuso is a defense attorney with several years of experience representing a wide array of defendants charged with all sorts of crime. Once he even represented a defendant at trial who was charged with terrorism. That particular case involved a group of individuals belonging to a domestic criminal street gang or organization that was caught up in a FBI sting designed to make them believe that they would be receiving aid from an FTO(Foreign Terrorist Organization) to further the stated aims of the domestic gang and avenge grievances it believed it suffered at the hands of the U.S. government.

That Case did not involve CIPA or FISA material but the normal wiretaps expected to be found in criminal conspiracies of gangs or RICO's. The government expert witness at trial did not testify in brief nor at length, at all, about any FTO, Islamism, Jihadism, so-called 'Radical Islam' or the like, nor about the recruiting tactics and methods of any FTO. The Government's expert witness' testimony was limited in scope, exclusively about the structure and ideology of the domestic street gang and hate group that the defendants were believed to be a part of. Nor did any testimony touch on the issue of radicalization or the use and cooperation of intelligence gathered by foreign ally agencies of the US such as MI5/MI6 and others like in this case.

The difference between that particular case and the instant one leaves a wide gulf as wide as the distance between the East and the West. As AUSA Marc Anton has repeatedly never failed to mention "this is a case touching on very important national security interests,"(See Gov. response to show cause order) there is a big difference between the two cases, however much I contest any credence to the ideas of the false 'national security' sirens proclaimed to sort of legitimize the executive branch's war on the First Amendment. In this case the Government has claimed the privileges embodied in CIPA procedures and there also exists plausible reason to believe that there exists FISA information in connection to this case. To this end AUSA Marc Anton has enlisted the assistance

of DC Counterterrorism attorneys. At trial the Government will have expert witnesses testify about the Islamic State, its ideology, its so-called recruiting tactics and methodology, online radicalization, lone wolves, secure and encrypted messaging, IS 'propaganda', types of attacks and incitement by IS, and so-called evidence of why it believes Defendant to have been part of, working on behalf or in coordination with the Islamic State.

I can provide reports submitted by terrorism analysts and experts, explaining in depth the difference between this case and the previous one that Mr. Casuso took part in. I could have letters and reports submitted by lawyers who represented cases where defendants were charged with providing material support to IS, explaining in detail the stark differences that exists should the court wish. I can have legal professors who'ver wrote in many law review jopurnals about the material support statutes, submit letters and/or reports explaining and detailing the differences if the court so wishes.

Another stark difference is that in this case I am charged simply for speech(that being literature) while the other cases dealt with an actual sting. Any lawyer can recognize the difference of cases involving proscribed acts and when speech itself is the charged act. Mr. Casuso does not have any experience dealing with cases fundamental to free speech nor has he ever done that. I am not making such a criteria but am simply highlighting differences.
Whatever list the court reviewed of would have shown attorneys of the calibre and like that this Defendant petitioned the court for previously. Counsel Casuso in an act of magnamity and in desire to ensure that I am provided the best defense has agreed to withdraw and not bill the court for any hours expended on the case, so that the interests of justice is served. In discussion with Counsel about attorneys with said mentioned experiences dealing with a material support case involving the handling of much classified information revolving around facts

deemed crucial for the Defense, the mention of CJA attorney Kenneth Swartz came up and we were wont of bringing his name to the attention of the court at the last status hearing but the court declined any addityional briefing of facts or words from Defendant and counsel at that time. We believe that the court's noble decisio-n to not randomly select an attorney from the CJA panel but to search for certain types of attorneys with specific qualifications was borne out of a desire to provi-de the Defendant with not simply experienced counsel but one that would be most effective in litigating this particular instant case in a matter conforming to the integrity of the court's role and in the most meaningful fashion that best safegua-rds the defendants/'s rights and interests.

  The simple fact that counsel has not handled cases cases dealing with FISA or CIPA is enough of a reason, I believe, to grant his motion to withdraw. In United States v. Jayyousi and United States v. Hassoun the lawyers representing th-e defendants obtained and had security clearances needed to view classified infor-mation and that is a case out of S.D.F.L. Within the M.D.F.L specifically in the case United States v. Al-Arian, 267 F. Supp.2d 1258 the court directed tha-t counsel "shall submit packets for security clearance to the appropriate agency" in a material support case involving FISA and CIPA.

  I wish not to frustrate or raise the ire of the court and am well atten-tive to the fact that the court may be hesitant to continue this revolving appoin-tments of counsel. I can assure the court that such is not my aim to find fault with any counsel appointed. I believe that I was well articulate of the type of attorney we would appoint to substitute Mr. Omar Malone. The possibility exists th-ough that I may not have made myself well undersstood. If that was the case then I deeply apologize for that lack oif clarity. Simply providing Casuso alone to attem-pt to withstand the onslaught of a sophisticated and elite prosecution team falls short of any nmtion of fair play. I truly understand that the millah of kufr is on-e and that the court as an institution of the Taghut is at odds and in opposition

(5)

to Tawhid and the Muwahideen, yet I believe that even the kufr laws and precedent Jahili rulings would incline you to not desecrate that which you hold sacred of values simply to deny me rights and further handicap my ability to effectively present any dfense to the falsehood allegations that invite jezebels to its travesty of justice prosecutorial brothel.

    For this reason we appeal the courts dismisaal of the motion to withdraw.

Respectfully Submitted,<br>
Abdul-Jalil<br>
(S.Baptiste)<br>
FDC Miami<br>
PO BOX 019120<br>
Miami,Fl 33101

6th of Nov,
Wednesday
2019

Enclosed herein is a document of five (5) pages containing an appeal to the magistrate's denial of a motion to withdraw as counsel submitted by Louis Casuso which corresponds to ECF 96, filed on 7th of October. The denial was issued at a status hearing that took place on the 10th of October.

I am also asking that the court provide me with the transcripts of the Jan. 2nd, July, Sep. 27th, and Oct. 10th status hearings. Some of these transcripts have been sought for more than 11 months, current and previous counsel has failed to obtain them for defendant so I am petitioning the court for such. Thank you.

Respectfully submitted,
Abdus-Jalil Rashid Al-Imarah
(S. Baptiste)




Samuel Baptiste #09681-104
FDC Miami
PO Box 019120
Miami, FL 33101

[ Special Mail ]

Judge Jose E. Martinez
United States Courthouse
400 North Miami Avenue
10th Floor
Miami, FL 33128

