<pre>
 1                   THE UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2
                           MIAMI DIVISION
 3
                   CASE NO.:  18-CR-20613-JEM-1
 4

 5

 6

 7   UNITED STATES OF AMERICA,    )
                                  )
 8             Plaintiff,         )          July 2, 2019
     v.                           )
 9                                )
     SAMUEL BAPTISTE, a/k/a       )
10   Abdul Jalil Rashid Imarah,   )
                                  )          Pages 1 - 26
11             Defendant.         )
     _____/
12

13

14

15                       MOTION HEARING

16        BEFORE THE HONORABLE ALICIA M. OTAZO-REYES
                UNITED STATES MAGISTRATE JUDGE
17

18

19

20

21   APPEARANCES:

22
     On behalf of the Plaintiff:
23
                     UNITED STATES ATTORNEY'S OFFICE
24                   500 East Broward Boulevard
                     Suite 700,
25                   Ft. Lauderdale, FL 33394
                     BY:  MARC S. ANTON, AUSA
</pre>

```
 1

 2   APPEARANCES CONTINUED:

 3
     On behalf of the Defendant:
 4
                         THE MALONE LAW FIRM, P.A.
 5                       701 Brickell Avenue
                         Suite 1550,
 6                       Miami, FL 33131
                         BY:  TODD OMAR MALONE, ESQ.
 7

 8

 9
     Transcribed By:
10
                         BONNIE JOY LEWIS, R.P.R.
11                       7001 SW 13 Street
                         Pembroke Pines, FL  33023
12                       954-985-8875
                         caselawrptg@gmail.com
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              (Thereupon, the following proceeding was held:)
 2         THE COURT:  Good morning, everyone.
 3         MR. ANTON:  Good morning, Your Honor.
 4         MR. MALONE:  Good morning, Judge.
 5         THE COURTROOM DEPUTY:  The United States of America
 6    versus Samuel Baptiste; Case Number 18-cr-20613-Martinez.
 7              Counsel, please state your appearances for the record.
 8         MR. ANTON:  Good morning, Your Honor.
 9              Marc Anton on behalf of the United States.  And with
10    me at counsel table is Hector Martinez, an attorney with the
11    Bureau of Prisons, Legal Department.
12         MR. MALONE:  Good morning, Judge.  Omar Malone on
13    behalf of Samuel Baptiste.
14         THE COURT:  All right.  Thank you very much.  You may
15    be seated.
16              Mr. Malone, Stephanie told me that you have a hearing
17    in front of Judge Ungaro at 11:00.  I will make sure that you
18    are out of here in time.
19         MR. MALONE:  Thank you.  Thank you, Judge.
20         THE COURT:  All right.  So, then, I have several
21    matters set.
22              The original matter was generated by a letter that was
23    sent by Mr. Baptiste requesting a status conference.  That has
24    been filed in the record as Docket Entry 62.
25              I have a motion filed by Mr. Malone on behalf Mr.
```

1  Baptiste relating to an investigator.  That motion has been

2  withdrawn because according to the motion to withdraw, the

3  matter has been resolved so I don't need to address that one.

4          And then, I have just recently filed last night the

5  motion to unseal Faretta hearing.  And then, I have the other

6  one that I didn't formerly add this one, but I will hear from

7  you on that one.

8          And then, added to today was also the motion to compel

9  to cease opening the mail outside Defendant's presence.  That

10  is Docket Entry 66.

11          So let me ask, first of all, Mr. Malone, have you

12  discussed with your client this letter that he sent to the

13  Court on his own?

14          And is there some matter that he has discussed with

15  you or is he kind of like -- I don't know.  I couldn't tell if

16  he was candidly complaining about you, complaining about this

17  other stuff that you have raised.

18          So can you give me a little bit of insight into this

19  to the extent that you are able to?

20          MR. MALONE:  Yes, ma'am.

21          I think as a general matter, Mr. Baptiste, because,

22  you know, the level of scrutiny he receives at the Federal

23  Detention Center, he is concerned that his legal mail, although

24  properly addressed by counsel, whether it was before I was

25  involved in this case and the Public Defender was involved and

1  since my involvement in this case that his legal mail has been

2  opened outside of his presence.  That's number one.

3          Mr. Baptiste raised with me -- and this deals with me

4  -- a level of candid frustration in part with our -- meaning,

5  he and I -- our level of communication at a certain point in

6  this case.

7          I assured Mr. Baptiste that our level of communication

8  will only get stronger and not weaker and only become more

9  intense and not less.  You know, we have a team working

10  together to assist Mr. Baptiste in connection with this matter.

11  It's time intensive.  Obviously this is not the only case I

12  have.

13          And so I respect his desire to see more of me and to

14  hear more from me.  There was a particular frustration with

15  regard to e-mail communication.  And so we have addressed that

16  issue, both he and I, and his level of communication.

17          I generally don't like e-mailing clients at FDC.  I've

18  been burned too many times.  I don't have anything to hide, but

19  I don't particularly care for a third party, who is not

20  indispensable to the legal team, having possession of

21  communications between my client and I.

22          And I have never really met a client who has been able

23  to stick to, hey, can you come and see me; I need to discuss

24  something with you.  It is always more of what I like to see.

25  So I have been historically hesitant to really engage in e-mail

1   and that has been part of his frustration, but he and I will

2   continue to discuss that and work through that.

3          He may have some other issues that he wants to raise

4   with the Court and so I'm happy to let him do that.

5          THE COURT:  All right.  Let's put that to the side for

6   a moment.

7          MR. MALONE:  Okay.

8          THE COURT:  Because maybe some of those things we will

9   need to excuse the Government from.

10         MR. MALONE:  Okay.

11         THE COURT:  But it sounds to me like some of the

12  issues looked at there have either been resolved or they have

13  been constructively resolved.  Meaning, there has been

14  discussion and interaction on them.

15         Let me address then -- and we will back to the letter

16  -- let me address then and I see that the Bureau of Prisons

17  attorney is here.  The one motion that is still live on this

18  business of opening legal mail outside Defendant's presence.

19         Let me hear either from Mr. Anton or BOP counsel

20  regarding the procedures.  And then, I will hear from you, Mr.

21  Malone, regarding concerns about that procedure.

22         MR. ANTON:  Judge, let me just start briefly, I can

23  advise the Court as you may or may not be aware, there was a

24  previous issue with legal mail with prior counsel.

25         It was addressed by the Court.  It was investigated by

1  the Bureau of Prisons and the Public Defender's Office and our

2  office.  And it turned out that the mail that had been sent by

3  the Public Defender's Office was not properly marked.

4          It was brought up with previous Defense counsel and

5  they were made aware of their improper markings.  They made

6  changes to the way in which they marked their envelopes and the

7  problem disappeared and there was never a problem again.

8          I've obviously read the Defendant's motion.  He does

9  not lay out any facts that we can use to investigate.  He does

10  not indicate what mail has been opened or when mail has been

11  opened.

12          He just says I think maybe my legal mail is being

13  opened.  He never once complained to the Bureau of Prisons or

14  followed any of the administrative steps that would have been

15  necessary for them to conduct any kind of internal review.

16          So at least from my standpoint, I'm at a loss as to

17  understanding what, if anything, is happening with his legal

18  mail.  I certainly have the BOP legal adviser here who can

19  explain the process in general.

20          But based on the motion, there have been no facts or

21  circumstances alleged that would allow us to even begin an

22  investigation into any potential problems with his legal mail

23  because he certainly doesn't point out any specific instances

24  of anything that has been opened.

25          THE COURT:  Okay.

1          MR. ANTON:  But I do have Mr. Martinez here.

2          THE COURT:  Mr. Martinez, if you would please, just

3     lay out succinctly what the process is for handling detainees'

4     legal mail, including the requirement that it be properly

5     labeled.

6          MR. MARTINEZ:  Yes, Your Honor.

7          So, unfortunately, it is not going to be much more

8     than what was just said, but there are two main requirements.

9     Only two requirements.  It has to be sent from someone who

10    identifies themselves as an attorney.

11         And also, on the same envelope, it has to have the

12    note.  It can be stamped or handwritten, but legal mail or

13    special mail must be opened in the presence of an inmate.

14    That's it.

15         THE COURT:  It needs that notation.

16         MR. MARTINEZ:  Yes, Your Honor.

17         And they get, obviously as you might imagine, they get

18    mail a lot downtown.  And they -- when I called them about it

19    they quoted that to me first.  They do it all the time.

20         And they are very strict with it because they, you

21    know, not related to this, but they have other issues of people

22    non attorneys, sending things in.  They follow that rule

23    strictly and they're well aware of it and there's no reason

24    they would do otherwise.  And unfortunately, we had no way to

25    investigate or anything like that.

1    THE COURT:  So, then, if a piece of mail comes in an

2  envelope that has, let's say, in this instance Omar Malone,

3  Esquire, whatever his address is on the letterhead and

4  envelope, then that language legal mail must be opened in

5  presence of recipient.

6    MR. MARTINEZ:  Yes, Your Honor.

7    THE COURT:  What do the mail handling people at the

8  FDC do with that?

9    MR. MARTINEZ:  So that legal mail, properly labeled

10  legal mail would go to whichever inmate's unit team and that

11  member of the unit team would bring it to the inmate and open

12  it in that inmate's presence and there's not much more than

13  that.

14    THE COURT:  Okay.  And then, after opening it, do they

15  inspect it?  Do they read it?  What do they do?

16    MR. MARTINEZ:  No.  The reason that all the mail is

17  inspected is to search for contraband and things like that.

18    For legal mail they are really -- they're not reading

19  it.  I mean, they might see the pages, but they're really

20  looking to see if there's anything that shouldn't be in there

21  like drugs.  There's a million types of contraband, but that's

22  all they are really inspecting.  No one is reading it or doing

23  anything like that.

24    THE COURT:  So they just open it, take the letter out,

25  shake it out maybe, whatever, and that's the end of it?

1       MR. MARTINEZ:  Essentially.

2           And I believe the -- unless certain -- I'm not sure of

3  the exact name of it, but some envelopes have that bubble wrap

4  inside, like a padded envelope.

5           THE COURT:  Yes.

6           MR. MARTINEZ:  Those I believe are contraband.

7           So those are not given to the inmate, but if it is in

8  a regular envelope, I believe they get that as well.  They get

9  to keep the envelope.

10          THE COURT:  Did you ever send bubble wrap?

11          MR. MALONE:  Have I?

12          THE COURT:  Sent bubble wrap?

13          MR. MALONE:  I have.

14          THE COURT:  You have sent bubble wrap?

15          MR. MALONE:  I did not know that at that time.

16          MR. MARTINEZ: You may.  I'm sorry.  I --

17          THE COURT:  No.  I just thought that if he hadn't sent

18  any, then we would not even need to address that.  So the

19  policy is if it is bubble wrap, the bubble wrap envelope gets

20  taken out and the inmate is only handed the letter itself?

21          MR. MARTINEZ:  I believe the bubble wrap, that

22  envelope is contraband, but the regular envelope is not and the

23  inmate would get everything but the bubble wrap envelope.

24          THE COURT:  All right.  Do you have any questions or

25  followups for the procedures?

1      MR. MALONE:  Yes, Judge.

2          Through the port because of Mr. Baptiste's charges, he

3   is subject to a particular procedure that other inmates are not

4   subject to.  He is on a heightened level of security, et

5   cetera.  And so, through the Court, I would ask whether or not

6   his mail is being copied and sent to some other division of

7   security in connection with the handling of his mail?

8      THE COURT:  So I guess the question is whether more

9   than what Mr. Martinez described applies to Mr. Baptiste?

10     MR. MARTINEZ:  So yes and no.  Not for legal mail.

11  For regular mail.

12     THE COURT:  Well, we're only talking about legal mail.

13  That is the motion that addresses legal mail.

14     MR. MARTINEZ:  I'm sorry because he mentioned a

15  process that would happen to nonlegal mail, but his legal mail

16  that shouldn't be the case.  From what I understand, it is

17  treated -- all inmates' legal mail is treated similarly.

18     MR. MALONE:  You know, listen, I'm not at FDC, but

19  Mr. Baptiste feels like -- and you know, he's an intelligent

20  young man -- feels like his legal mail is being treated

21  differently than other inmates at the facility.

22          He indicates that he did complain to SIS at the

23  Federal Detention Center about the handling of his mail and

24  provided particular dates as it related to those items being

25  improperly opened outside of his presence and we're talking

1  about legal mail only.

2          THE COURT:  So he's concerned -- because he just

3  raised something about copying stuff and Mr. Martinez said

4  legal mail does not get copied.  So now are we back to just

5  opening outside of his presence?

6          MR. MALONE:  Yes, I wanted to point out that that was

7  his concern in part as well that it being opened outside of his

8  presence.  And like, his regular mail, his regular mail unlike

9  a normal inmates' regular mail, Mr. Baptiste's regular mail

10 gets sent out to another security unit because of the nature of

11 his charges.

12          THE COURT:  But that seems to be what their protocol

13 is, correct?

14          MR. MARTINEZ:  That's correct, Judge, and that is the

15 protocol and --

16          MR. MALONE:  And I have no objection to that.  I

17 understand that is the process.

18          MR. MARTINEZ:  I just want to make sure that it is

19 clear.  There are two separate categories of mail.  There is

20 his nonlegal mail, which as Defense counsel has mentioned and

21 we have addressed numerous times before with his previous

22 counsel does get -- his nonlegal mail does get scanned and does

23 get sent to the Counter Terrorism Unit within the Bureau of

24 Prisons for heightened scrutiny.

25          His legal mail does not get scanned.  It does not get

13

1 sent anywhere else.  It does not get opened by anyone within

2 the Bureau of Prisons to be read or interpreted.  If it is

3 properly marked legal mail, it is only to be opened in the

4 presence of the Defendant.

5        And that is the policy and that is what his local BOP

6 attorney is saying here today and that is what the attorney

7 advisory (inaudible) in Indiana has said is the process in

8 place today.

9        So I am not sure what mail he is claiming is being

10 opened, but the only possibility is improperly marked legal

11 mail because that is the only option here today that's left

12 because nothing else is being opened outside of his presence.

13        THE COURT:  All right.

14        MR. MALONE:  Judge, would the Court like to hear from

15 Mr. Baptiste?

16        THE COURT:  If he has a specific --

17        MR. MALONE:  As to this mail issue.

18        THE COURT:  If he has a specific issue having heard

19 what the protocol is.  If he still has a specific issue --

20        MR. MALONE:  I think he does.

21        THE COURT:  Go ahead, Mr. Baptiste.

22        THE DEFENDANT:  Do I stand up?

23        THE COURT:  Yes, you can remain seated, sir.

24        THE DEFENDANT:  In regards to my mail as the

25 Prosecutor Anton just mentioned, there is two ways that my mail

1  is handled; my legal mail and my general mail.  Due to the

2  fact, not because of my charges, before my charges I was

3  assigned to a Communication Management Unit and for this

4  reason, my mail goes through heightened scrutiny.

5          So for this reason any regular mail that I receive, it

6  is copied, scanned, and sent to the Counter Terrorism Unit of

7  the Bureau of Prisons and this is any general mail that I

8  receive.

9          The issue that has been mentioned to previous counsel,

10  you know, Abigail Becker, she mentioned this to Anton and she

11  mentioned this to the other legal eyes in the Bureau of the

12  Bureau of Prisons.  The issue that has arisen, not once has any

13  counsel sent me mail which had improper markings.  Every single

14  piece of legal mail that was sent to me had proper markings.

15          Now, at one point in time, counsel from the Public

16  Defender sent me a letter, a regular white envelope with

17  markings stating that it comes from the Federal Public

18  Defender's Office, as well as being legal stamped legal mail

19  saying attorney/client privilege, not to be opened except in

20  the presence of, you know, the recipient, the client.

21          Now this letter, proper markings and everything, it

22  came to me through general mail.  This was back in January --

23  yes, back in January.  It came to me -- and December.  Once in

24  December and once in January.  They came to me through general

25  mail.

1          So, meaning, that at some point there is a breach of

2   protocol in the handling of legal mail at BOP and this isn't

3   just me.  I see many people's mail from the Federal Public

4   Defender's Office come to them through general mail.  And on

5   the occasions that this happened to me, I had counsel speak to

6   Anton because the conditions that apply to me means that any

7   mail that comes to me through general mail is copied.

8          So if she sends -- if any counsel sends mail to me and

9   for whatever reason, as you know they've falsely alleged that

10  it was improperly marked, and it comes through general mail due

11  to the fact that they don't consider it legal mail, they must

12  -- according to the protocols in place -- they must copy and

13  scan it and send it to the Counter Terrorism Unit.

14         On two occasions I received mail that came bubble

15  wrapped.  The first was when the Public Defender's office was

16  representing me and the first occasion they've handled it

17  correctly.  So they've retained the bubble wrap envelope

18  because they consider it contraband.

19         It came to me through legal mail and the counselor who

20  handles legal mail kept the envelope and gave me, you know, my

21  legal documents without reading through it, without doing any

22  tampering with it in any way whatsoever.

23         The second time around March or April present counsel,

24  Omar Malone, he sent me documents through legal mail properly

25  marked, addressed, and everything.  And this time it did not

1  come to me through legal mail.  It came through general mail.

2       I received two large envelopes, two large yellow legal

3  envelopes with no markings from him, but from the Bureau of

4  Prisons.  They just stuffed it in there and gave it to me

5  through general mail.

6       And at the time where inmates 7:00 p.m., when they

7  receive their general mail, I received my mail.  And that same

8  night and the next day I sent multiple requests to SIS, through

9  the captain, through the assistant warden, and to the counselor

10 as well and they mentioned it has nothing, you know, to do with

11 them.  I've complained about the mail room.

12      So, meaning, if they're saying that my mail, if it is

13 improperly marked is being copied, you know, that's still legal

14 mail because as I've mentioned, not on one occasion that any

15 counsel sent mail that was not properly marked.

16      So on occasions when the mail came through general

17 mail the concern is that since they, themselves, do not

18 consider this as legal mail for whatever, you know, technical

19 reason -- actually there is no technical reason, but for

20 whatever reason that, you know, they decide, I believe that

21 these parcels or these packages of mail that I've received,

22 which are legal mail and which are attorney/client privilege

23 has been copied and sent to the Counter Terrorism Unit.

24      So such things where draft motions that we're working

25 on, such things that are things regarding transcripts, things,

1  you know, many sensitive matters, you know, pertaining to, you

2  know, trial strategy and to the defense that the concern is

3  since these items came through general mail, yet they were

4  properly marked as legal mail, that the Bureau of Prisons, you

5  know, copied these.  These items and sent it to the Counter

6  Terrorism Unit, you know, with the acknowledgment or with the

7  concept of Anton and, you know, whatever the present legal eyes

8  are.

9            THE COURT:  Well, we go back to what the protocol is.

10           If it comes in the bubble wrap, they will take it out

11  of the bubble wrap and hand it to you.

12           Now let me ask, Mr. Martinez, on those occasions does

13  Mr. Baptiste get that mail with his general mail, or is there a

14  separate procedure where he gets that handed to him?

15           MR. MARTINEZ:  If properly marked legal mail comes in,

16  in a bubble wrapped envelope it will get processed like legal

17  mail, except we keep the envelope.

18           And I don't mean to -- and I in no way mean to call

19  anybody, you know, saying anything wrong or dishonest, or

20  anything like that, but this is the exact situation where the

21  PLRA is for.  We have administrative remedies for him to go

22  through.  One of which is directly to the warden .  I don't

23  know.  I checked his remedy history and there wasn't anything

24  about the mail.

25           He may have very well spoken to SIS or the AW, but we

1   have a process for all inmates to address these issues and then

2   we have a chance to look at specific dates and look at specific

3   situations and the warden has to sign off on a response to him

4   that that should happen before this motion stage and we would

5   be able to look into it.

6           I don't know the details of everything that he has

7   just brought up.  I do know what our protocols are and, again,

8   he would be able to get his legal mail regularly through the

9   padded envelope.  We keep the padded envelope.

10          THE COURT:  But my question to you was in those

11  instances it gets handed to him separately from general mail?

12          MR. MARTINEZ:  I believe the legal mail is done

13  separately by the unit team.  I think the general mail, the

14  unit officer might hand out the general mail at a different

15  time, but I'm not certain.  I believe so.

16          THE COURT:  So that's the procedure.  If it came in a

17  bubble wrap, it gets taken out of the bubble wrap and then

18  handed to him?

19          MR. MARTINEZ:  Oh, I'm sorry, Your Honor.

20          I'm not sure if they put it in another envelope or not

21  or if they do that in front of him and just give him the

22  contents.

23          THE COURT:  Have you ever seen, Mr. Baptiste, somebody

24  taking something out of the bubble wrap and then hand you the

25  rest of the stuff?

```
 1          THE DEFENDANT:  Yes.  As I mentioned on the first
 2   occasion back in January, they followed the correct procedures.
 3   It was in bubble wrap, which they considered contraband.  They
 4   took it out of the bubble wrap and they confiscated the bubble
 5   wrap.  They handed me the contents of the envelope on that
 6   occasion.  Yet when --
 7          THE COURT:  In your presence?
 8          THE DEFENDANT:  In my presence.
 9          Yet the last time when Mr. Malone, he sent me legal
10   mail back in around March or April, this didn't happen.  I had
11   two large envelopes, you know, that he sent.
12          So what they did instead, they took it out of the
13   actual marked legal envelope and they put it in fresh blank
14   yellow legal envelopes and this came to me at legal mail.  This
15   was around March and April.
16          THE COURT:  I'm sorry.  Did you mean to say at legal
17   mail or at general mail?
18          THE DEFENDANT:  No, this came to me at general mail.
19          So, meaning, they received the packet through the mail
20   room and the legal room.  And instead of having the counselor
21   give me the contents of the package, they put it in a different
22   unmarked envelope and gave it to the unit officer and the unit
23   officer handed it to me at general mail and I don't know what
24   happened in between this time.
25          THE COURT:  Okay.  Here's what I would suggest.
```

1           There seems to be some confusion here as to how things

2   were handled.  I would I say that you follow the protocol that

3   Mr. Martinez is alluding to.

4           And on instances if this should happen again where you

5   feel that legal mail was improperly handled that you follow

6   whatever formulary is described so this thing can -- pardon the

7   pun -- bubble up to the warden so that it can be documented.

8   So that they can trace it immediately and figure out when it

9   came, and how it was handled because we know what the protocol

10  is.  You understand it.

11          You may, in your opinion, think that the protocol was

12  violated at some point in time, but we need to -- the FDC

13  people need to have the opportunity to investigate the

14  particular instance.  They are telling me what the protocol is

15  and Mr. Martinez is saying that is the protocol that they

16  follow.

17          You are saying that there is an occasion or more where

18  you think it wasn't followed.  You need to report that

19  immediately as it happens through the channels.  Not just

20  speaking to somebody, but filling out whatever form is required

21  so there is a tracking of the issue.

22          Is that something that you can do in the future should

23  it arise again?

24          THE DEFENDANT:  Yes, but the issue wasn't just in

25  regards to bubble wrap.  As I mentioned, in January a regular

1  sized envelope with proper markings and everything also came to

2  me through general mail.

3          THE COURT:  Okay.

4          THE DEFENDANT:  Now, they've mentioned there is a

5  grievance process in place where if a prisoner has any

6  grievances or complaints where he can follow the chain of

7  command.

8          Around this time, when the initial matter was first

9  raised for the previous liaison for the BOP, I've arrived here

10  in August of 2018.  When I've arrived here in August of 2018,

11  there were many issues.  I filed over 13 grievances.  I was

12  effectively barred and excluded from the grievance process by

13  the SIS and by the previous unit team that I had.

14          So the only options I had to avail myself of, you

15  know, any reprieve was by going through previous counsel,

16  Abigail Becker.  And she previously raised this with the

17  prosecutor and she asked them if there is anything -- I have a

18  copy of the e-mail -- where she asked them if I was on -- and

19  she asked them about the legal process of my mail.  She asked

20  if any of my mail was being copied.  He asked if everything is

21  properly marked there was no reason for my mail to be copied if

22  it was legal mail.

23          But on the contrary my mail has been -- I can't say it

24  has been copied, but my mail has actually went about in a

25  different manner than the protocols dictate.

1        So the legal matter with previous counsel, you know,

2   has sent not bubble wrap envelopes, but small envelopes, the

3   regular sized envelopes.  They went through general mail.  And

4   for this reason, you know, due to the fact that I was

5   effectively barred -- right now my grievances, you know, are

6   being processed, you know, normal right now.

7        But at that time, I was effectively barred so counsel

8   took it upon herself to initiate dialogue with Anton about

9   this.

10       THE COURT:  So the next time it happens, follow the

11  grievance procedure.  And if you're not satisfied, obviously,

12  with the assistance with Mr. Malone, then it can then after

13  going through the whole procedure with FDC, then it can be

14  raised with the Court if there is no satisfaction.

15       Okay.  So I think for purposes of this hearing, I will

16  deny the motion to compel because it seems to me that the

17  record before the Court is not specific enough to find any

18  violation.

19       But I will deny it without prejudice so if you can

20  document a violation in the future, it can be brought to the

21  attention of the Court after following through on the grievance

22  procedure.

23       Now, let me ask, Mr. Malone, do you have the motion to

24  unseal Faretta hearing and we have the other matter of any

25  other issues that Mr. Baptiste may wish to address with me.  I

1  think both of those matters would more appropriately be handled

2  *ex parte.*

3          How long is your hearing before Judge Ungaro?

4          MR. MALONE:  It's a change of plea, Judge.

5          THE COURT:  So it should be quick.

6          MR. MALONE:  Multiple defendants.

7          THE COURT:  Oh, multiple defendants.

8          MR. MALONE:  Yes, ma'am.

9          THE COURT:  How long do you figure?

10         MR. MALONE:  Maybe an hour or so.

11         THE COURT:  All right.  I am free until 2:00.

12         So if the Marshals can keep Mr. Baptiste here and if

13  you don't have any other engagements, I am happy to address

14  these other matters with you afterwards.

15         MR. MALONE:  Judge, can we --

16         THE COURT:  It's getting close to quarter till.  I

17  don't want you to miss.

18         MR. MALONE:  No, that's fine.

19         I think we probably can handle, I think, with enough

20  time for me to get across the court and Mr. Anton not have to

21  from Fort Lauderdale -- the Faretta hearing just generally.

22         THE COURT:  Yes.

23         MR. MALONE:  I saw a copy of the transcript for me,

24  for the Defense.

25         And because a portion of that hearing was done

1  sidebar, sealed, the court reporter, even though it is coming

2  to the Defense and that sidebar was certainly about issues

3  regarding the defense, she can't release it to me unless it is

4  unsealed for that limited purpose of giving it to me.  That's

5  my only issue.

6         THE COURT:  Okay.  And what is the Government's

7  position on that?

8         I have no recollection of what was discussed.

9  Obviously, if it was sidebar, it would not be included.

10        MR. ANTON:  I was not here, but I was excused during

11 95 percent of the Faretta hearing.

12        THE COURT:  Right.

13        MR. ANTON:  So I don't know what happened in court or

14 sidebar.  If he wants the conversation at sidebar, it's fine

15 with me.  I just need to -- I have no problem with me.

16        I think your order unsealing has to be really clear

17 because if it unseals the Faretta hearing by mistake, then it

18 will be public and anybody can see it.  So you need to be very

19 specific that you are unsealing it only for the purpose of

20 allowing -- unsealing the complete hearing transcript to allow

21 only the Defense to review it --

22        MR. MALONE:  That's what the motion is.

23        MR. ANTON:  -- and not to be released to the public.

24        THE COURT:  All right.

25        MR. MALONE:  That's what the motion is.

```
 1           MR. ANTON:  That's fine.

 2           THE COURT:  All right.

 3           MR. MALONE:  To be released -- to allow her to do the

 4  transcript so it is released to me only --

 5           THE COURT:  And not filed in the record.

 6           MR. MALONE:  Exactly.

 7           THE COURT:  Transcribe it.  Release the complete

 8  transcription to you, but not file that complete transcription

 9  in the record.

10           MR. MALONE:  Exactly.

11           THE COURT:  I can do that.

12           MR. ANTON:  Sure.  That's fine.

13           THE COURT:  Okay.  We can do that.

14           MR. MALONE:  I'm told by Mr. Baptiste all the other

15  issues are moot.

16           THE COURT:  Okay.  Awesome.

17           MR. MALONE:  Judge, we thank you for your time and

18  listening to Mr. Baptiste.

19           THE COURT:  Happy to do it.

20           And then, Mr. Martinez, I know I always get great

21  cooperation from the legal counsel at FDC whenever issues

22  arise.  So I want to thank you for your presence here.

23           MR. MARTINEZ:  Thank you, Your Honor.

24           THE COURT:  All right.

25           MR. MALONE:  Thank you, Judge.
```

1          THE COURT:  Take care.

2          MR. ANTON:  Thank you, Judge.

3          THE COURTROOM DEPUTY:  All rise.  Court is adjourned.

4          (Thereupon, the proceedings concluded.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                                    CERTIFICATE

3

4          I hereby certify that the foregoing transcript is an

5    accurate transcript of the audio recorded proceedings in the

6    above-entitled matter.

7

8

9

10
     04/18/21                          Bonnie Joy Lewis,
11                           Registered Professional Reporter
                                 CASE LAW REPORTING, INC.
12                                7001 Southwest 13 Street,
                                Pembroke Pines, Florida 33023
13                                     954-985-8875

14

15

16

17

18

19

20

21

22

23

24

25