THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

18-20613-CR-MARTINEZ

UNITED STATES OF AMERICA,

        Plaintiff,

v.

SAMUEL BAPTISTE,

        Defendant.
_____/

## DEFENDANT'S SENTENCING MEMORANDUM

In his Plea Agreement with the government, Mr. Baptiste agreed that the guidelines sentence for the offense of conviction, Count 6 (attempting to provide material support to terrorists in violation of 18 U.S.C § 2339A(a)) is 180 months. Mr. Baptiste and the government jointly agreed to recommend a sentence of 180 months (15 years) pursuant to Fed. R. Crim. Proc. 11 (c)(1)(B).[1] D.E. 239 at 3. But whether the sentence imposed for Count 6 would run consecutively or concurrently with Mr. Baptiste's currently running 80-month sentence for a felon-in-possession-of-a-firearm violation, was left open by the pre-trial agreement. Judge Cooke issued that sentence on June 21, 2017. *United States v. Baptiste*, No. 1:16-cr-20907, (S.D. Fla. June 21, 2017).

### A. Legal Standards

Whether a sentence is run concurrently or consecutively is governed by 18 U.S.C.S. § 3584, which states in relevant part as follows:

---

[1] Under Fed. R. Crim. Proc. 11 (c)(1)(B) the court is not bound by the parties sentencing recommendation and is free to award a lesser sentence.

1

> …[I]f a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt. …Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently. 18 U.S.C.S. § 3584(a).

Section 3584(a) is neutral as to whether concurrent or consecutive sentences should be imposed. *United States v. Ayers*, 795 F.3d 168, 174 (2015). In determining whether the multiple terms of imprisonment will be ordered to run concurrently or consecutively, the court shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in Section 3553(a). 18 U.S.C.S. § 3584(b).

> The Section 3553(a) factors are:
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines.

Mr. Baptiste, through counsel, respectfully submits that the nature and circumstances of the offense and the kinds of sentences available warrant running the sentence for his present offense of conviction concurrently with his prior sentence imposed by Judge Cooke.

**B. Background of the Prior Felon-in-Possession Conviction and Current Offense of Conviction**

The prior offense of conviction and current offense of conviction are both products of undercover sting operations that were being simultaneously conducted by the FBI. The investigation of Mr. Baptiste began in 2014 in response to Mr. Baptiste posting alleged terrorism-related content praising Usama bin Laden and Anwar Al-Awlaki and encouraging jihad. As part of that investigation, in April of 2014, the FBI began monitoring social media accounts purported to belong to Samuel Baptiste. *See* Affidavit, Application for a Search Warrant by SA Timothy Dietz. The FBI continued to monitor Mr. Baptiste's communications for approximately two years. During that period Mr. Baptiste's speech expressed support for terrorist acts and terrorist organizations but remained within the protections of First Amendment speech.

In 2016, Mr. Baptiste was approached by undercover employees and confidential sources both online and in person. The confidential human source met with Mr. Baptiste in-person on multiple occasions to gain his trust and then promoted a criminal scheme whereby Mr. Baptiste and an associate would join with the confidential human source in a plan to illegally ship weapons to Haiti. In June 2016, an undercover female employee (UCE) approached Mr. Baptiste online and later via telephone conversations wherein she expressed interest in his online writing in support of Jihad against Western governments. Mr. Baptiste responded to the undercover female by attempting to pursue a romantic relationship going so far as to send the undercover female agent money for living expenses and proposing marriage. Most probably because of Mr. Baptiste's clear romantic desires with respect to the female undercover, the female undercover did not likewise

attempt to engage Mr. Baptiste in criminal conduct but instead confined her role to probing Mr. Baptiste's motive and commitment to the support of violent jihad. When Mr. Baptiste created a Telegram channel concerning the use of weapons entitled "Jihadi Gear" in October of 2016, additional undercover employees posing as U.S.-based supporters of the Islamic State of Iraq and Syria (ISIS) approached Mr. Baptiste through the channel seeking his assistance.

The in-person and online operations both came to a conclusion in late October and early November 2016.  On October 23, 2016, Mr. Baptiste and an associate named Noel, went to a gun range with the confidential source where Mr. Baptiste used multiple firearms. This served as the basis for the original felon-in-possession-of-a-firearm offense of conviction before Judge Cooke. On November 5, 2016, Mr. Baptiste and Noel were shown a sea container earmarked to go to Haiti with relief items. The confidential human source indicated to Mr. Baptiste and Noel that this container could be used to ship weapons to Haiti and produced two AR-15s. Noel bought a rifle from the confidential human source but Mr. Baptiste was unwilling to participate in the venture.

On the same day, an online male undercover employee approached Mr. Baptiste through his Telegram channel seeking information on explosive devices. Mr. Baptiste declined to furnish the information telling the undercover employee that he (undercover employee 1) could look the information up himself online. On November 6, a second undercover employee approached Mr. Baptiste online through his private Telegram channel telling Mr. Baptiste that he (undercover employee 2) had black powder, and asked for assistance with bomb building advice.  Mr. Baptiste responded by saying that the questions were better asked in the open channel for educational purposes.  Mr. Baptiste then conducted an online search himself and posted the results in the form of three links to internet sites providing examples of explosive devices and directions on

construction, along with a PDF of the "Black Book".  This conduct serves as the basis for the current offense of conviction.

On November 9, 2016, Mr. Baptiste was arrested by the FBI Joint Terrorism Task Force. The arrest was affected by agents ramming Mr. Baptiste's car and utilizing smoke and blast grenades. At the time of the arrest Mr. Baptiste was not attempting to flee and there was no evidence that there was reason to believe Mr. Baptiste was armed. During the course of the arrest Mr. Baptiste sustained several lacerations from glass shards after his driver side window was shattered by the arresting agents using rifle butts. Mr. Baptiste subsequently filed a civil lawsuit alleging, in part, excessive force in his arrest, which he agreed to dismiss with prejudice as part of his Plea Agreement. Doc. 239 at 6.

Subsequent to his arrest, Mr. Baptiste was questioned by two FBI agents. While a portion of the agent's questions concerned the firearms related charges; the majority of the interrogation focused on Mr. Baptiste's alleged posts relating to terrorism-related activities and especially on the post concerning construction of explosive devices. Thereafter, on November 10, 2016, the government filed a Complaint against Mr. Baptiste and the co-defendant relating to the unlawful possession of a firearm and alleged conspiracy to unlawfully export firearms to Haiti. *United States v. Baptiste*, No. 1:16-cr-20907, Complaint (S.D. Fla). On December 1, 2016, the government filed an Indictment on charges relating only to the firearms. Id. at D.E. 17. The discovery produced in conjunction with that Indictment, however, include the defendant's statements that were later charged in this current count of conviction. In short, the government was fully aware of the conduct that constitutes the present violation but chose not to seek an indictment on it at the time.

### C. Current Count of Conviction and Argument for Concurrent Sentencing

On June 21, 2017, Judge Cooke sentenced Baptiste to 80-months imprisonment followed by three years of supervised release. Then, on July 19, 2018, Mr. Baptiste was indicted on the present Indictment (for conduct on November 6th, 2016), and arrested on August 24, 2018. Mr. Baptiste was initially represented by the Federal Public Defender's Office. On August 28, 2019, Mr. Baptiste through FPD counsel, filed a motion seeking dismissal for pre-indictment delay based on the failure to indict the present charges at the time of his first arrest in 2016. D.E. 82. On behalf of Mr. Baptiste counsel argued that the delay had prejudiced Mr. Baptiste in part because the delay had cost him the opportunity to seek concurrent sentencing relying on *United States v. Johnston*, 2013 WL 3777315 (M.D. Ala. 2013). This court denied the motion finding that Mr. Baptiste did not have a constitutional right to concurrent sentencing and that the failure and the prospective denial of concurrent sentencing was speculative.

The Eleventh Circuit however has noted that just because government conduct does not arise to a level which bars prosecution does not mean that it should not be considered as a part of the circumstances of the offense. Quite the opposite. In *United States v. Sanchez*, 138 F.3d 1410, 1414 (11th Cir. 1998), the Eleventh Circuit held that government conduct could be considered in the form of a "Sentencing Factor Manipulation*."* The *Sanchez* Court explained that

> …sentencing factor manipulation focuses on the government's conduct. "It requires us to consider whether the manipulation inherent in a sting operation, even if insufficiently oppressive to support an entrapment defense, … or due process claim, … must sometimes be filtered out of the sentencing calculus." *United States v. Connell*, 960 F.2d 191, 194 (1st Cir. 1992). Such a claim points to "the opportunities that the sentencing guidelines pose

for prosecutors to gerrymander the district court's sentencing options and thus, defendant's sentences." *Sanchez* citing *Connell*, 960 F.2d at 194.

Counsel respectfully submits that Mr. Baptiste's case presents precisely the type of case warranting relief under *Sanchez*. The government unquestionably played a major role in procuring Mr. Baptiste's criminal conduct, in the form of posting links to materials that he had not written and a portion of a manual that had been available for years. Nevertheless, Mr. Baptiste recognized and admitted that his statements supporting terrorism were sufficient to demonstrate predisposition.

Likewise, the government decision to delay prosecution did not amount to a violation of due process in part because it could be remedied, if warranted, at sentencing. Running this sentence concurrently with the prior sentence imposed by Judge Cooke would do just that. Further, it will serve a public interest by not encouraging the government's decision to charge in a piecemeal fashion, without jeopardizing public safety. This is because the greatest protection to public safety is provided not by running the sentences consecutively but rather by the defendant's agreement to a lifetime of supervised release. The crime of conviction occurred completely within the confines of the internet. Supervised release permit's the constant review and monitoring of the defendant's internet activities thereby protecting the public.

### D. Conclusion

For the forgoing reasons, Mr. Baptiste respectfully requests that his sentence be run concurrently with the prior sentence.

                                              Respectfully submitted,

                                              s/ ***S. Patrick Dray***
                                              S. PATRICK DRAY, ESQ.
                                              Florida Bar No.: 0180157

pat@patdray.com

**S. Patrick Dray, P.A.**
40 NW 3rd Street, Suite 200
Miami, Florida 3128

18501 Pines Blvd., Suite 344
Pembroke Pines, Florida 33029

Telephone: (954) 374-4323
eFax:   (786) 513-2244


 */s/ Charles Swift*
Charles D. Swift
CONSTITUTIONAL LAW CENTER
FOR MUSLIMS IN AMERICA
100 N. Central Exp'y, Ste 1010
Richardson, TX 75080

(972) 914-2507
cswift@clcma.org

## CERTIFICATE OF SERVICE

**I CERTIFY** that December 29th, 2021, I electronically filed the foregoing document with service to all counsel of record using CM/ECF.


s/ *S. Patrick Dray*
S. PATRICK DRAY, ESQ.